No. 26,025.

Lillian T. Biltgen, *Appellee*, v. J. L. Biltgen, *Appellant*.

SYLLABUS BY THE COURT.

1. Trial—*Findings by Court—Sufficiency.* Where a trial court, on conflicting evidence, makes findings which sustain the judgment and specifically states that on all other matters the facts are found generally in favor of the prevailing party, it is not error for the court to refuse to make other or contrary findings.

2. Divorce—*Cross-action for Compensation for Services—Right to Jury Trial.* In a divorce action commenced by a wife in which the husband sets up an action for the recovery of money as compensation for services rendered by him to her on her property, it is not error to deny a trial by jury.

3. Same—*Condonement—Evidence.* Under the evidence, it was not error for the court to find that there had been no condonement by the wife of the misconduct of the husband.

Appeal and Error, 4 C. J. p. 883 n. 33. Divorce, 19 C. J. pp. 47 n. 22, 51 n. 67, 146 n. 77, 152 n. 76; 14 A. L. R. 932; 34 L. R. A. n. s. 360; 18 L. R. A. n. s. 305; 9 R. C. L. 344, 383.

4. Same—*Extreme Cruelty—Acts Constituting.* Where a husband curses his wife, calls her vile names, chokes her, strikes her, and accuses her of having illicit relations with other men, he is guilty of such conduct as will justify a district court in granting her a divorce on the ground of extreme cruelty.

Appeal from Seward district court; Charles E. Vance, judge. Opinion filed November 6, 1926. Affirmed.

*John W. Davis,* of Greensburg, and *Manvel H. Davis,* of Kansas City, Mo., for the appellant.

*G. W. Sawyer, John C. King,* both of Liberal, and *H. E. Hoover,* of Canadian, Texas, for the appellee.

The opinion of the court was delivered by

Marshall, J.: The plaintiff sued for a divorce on the ground of extreme cruelty. The defendant denied the allegations of plaintiff's petition and asked for divorce on the ground of gross neglect of duty. In his answer, he set up a cause of action against the plaintiff in which he asked compensation for services rendered by him for the plaintiff on her property for a period of seven years at the rate of $5,000 a year. Judgment for divorce was rendered in favor of the plaintiff. No relief was granted the defendant on his cause of action against the plaintiff. The defendant appeals.

The court made extensive findings of fact, among which were the following:

"(24) That during all of his married life, the defendant has been addicted to the use of profane language, and on numerous occasions became angry, and used profane language extensively in the home, and in the presence of the plaintiff, and on a few occasions cursed her, and called her 'A God-damn son of a bitch.'

"(25) That from the time shortly subsequent to their marriage until the date of their final separation, plaintiff and defendant, from time to time, engaged in violent quarrels, and on one occasion, about the year 1919, the defendant attempted to choke the plaintiff; on another occasion about the year 1919, threw a hair brush at the plaintiff, and on another occasion about the year 1921, struck her."

"(27) That during the time the parties lived on the farm the quarrels and disagreements continued, and on or about the first day of September, 1922, the plaintiff rented a house in the city of Liberal and moved into the same, intending at the time to separate from the defendant, but shortly after she moved to town, the defendant also moved to the same house, and the plaintiff consented to resume her marital relations with him, and they continued to live together as man and wife until the 5th day of October, 1923, the expenses of the household being paid entirely by the plaintiff, and the quarrels and profanity growing more frequent and severe.

"(28) That about the latter part of August, 1923, the plaintiff and defendant

became engaged in a violent quarrel, and in the yard adjacent to the residence occupied by them in Liberal, the defendant, in anger, and in a tone sufficiently loud to be heard by the lady sleeping in the adjoining house, threatened to beat the 'God-damn shit out of the plaintiff,' and pursued about the yard, apparently, attempting to strike her.

"(29) That about the first of September, 1923, the plaintiff concluded that she could not live in peace and harmony with the defendant, and concluded to separate from him, and entered into negotiations with him for the purchase of a surrender of the lease upon her land (farm) held by him, and as the result of such negotiations it was agreed between the parties that the defendant should seed said farm to wheat and then surrender the farm, with the growing crop thereon, all rights which he had under the lease, and all farming implements and other personal property owned by him on said farm, for the sum of $14,000."

"(31) That during the period between October 5, 1923, and the date of the filing of this suit, defendant talked with the plaintiff on business matters at the Stoufer home a number of times, and on several occasions she went with him in the daytime to the farm occupied by him, and on two occasions spent the night and occupied the same bed with him, at the home of her brother, in Seward county, Kansas."

The court made another finding as follows:

"(11) That the parties lived and kept house in Liberal, until about the first of October, 1918, and during said time the defendant, sometimes voluntarily, and sometimes at the request of the plaintiff, assisted her in making improvements upon her farm lands in the vicinity of Liberal, looking after the purchasing of materials and the employment of laborers, and also assisted her in the marketing of her share of the crop received from her lands, and in making settlements and adjustments with her tenants. And such services were of the value of more than $100."

Another finding reads:

"(39) Except as in these findings specifically stated, the court finds the facts generally in favor of the plaintiff, and against the defendant."

The defendant requested a number of findings of fact, among which was the following one:

"Plaintiff requested the defendant to look after her separate property, as heretofore stated, and promised and agreed to pay him the reasonable value of his services, and that defendant performed said work under said agreement, and fully carried out all the terms of said agreement, and rendered such services to her as heretofore stated for a period of six years, and that such services were reasonably of the value of $5,000 per year. The services performed by defendant were not the usual and customary services required by the marriage contract, but were extraordinary services performed in building up plaintiff's separate estate and property."

The court did not make any of the findings requested by the defendant.

1. The defendant says that "the trial court erred in failing to make findings of fact upon material issues, as requested by appellant." The defendant introduced evidence which, if it had been believed by the court, tended to support the findings requested by him. The evidence of the plaintiff supported the findings made by the court. The evidence concerning the extreme cruelty of the defendant, the gross neglect of duty by the plaintiff, and the contract for compensation to be paid by the plaintiff to the defendant for services rendered to the former by the latter, was so contradictory it could not be reconciled. Upon that contradictory evidence the court made the findings on which the judgment for divorce was rendered in favor of the plaintiff. The court failed to find that there had been a contract between the plaintiff and the defendant concerning compensation to be paid for services performed by the defendant for the plaintiff. The court did find in favor of the plaintiff on all issues not specifically covered by the findings of fact. Under these circumstances this court cannot say that the court committed error in failing to make the findings of fact requested by the defendant.

2. The defendant urges that "the trial court committed error in overruling defendant's demand for a jury." This is a divorce action, not an action for the recovery of money. The defendant sought to recover money under a cause of action set up by him. The plaintiff demurred to that cause of·action on the ground of misjoinder. The court overruled the demurrer. It probably should have been sustained, but it is not necessary to decide that question at this time. Section 60-1506 of the Revised Statutes of 1923 provides for the control and equitable division and disposition of the property of parties to an action for divorce when the parties appear to be in equal wrong. Section 60-1511 provides for alimony or division of property when a divorce is granted. What division of property shall be made is largely within the discretion of the trial court. (*Deeds v. Deeds,* 108 Kan. 770, 773, 196 Pac. 1109.) In determining the division of property between the plaintiff and the defendant, it was proper for the court to consider how the property of each was acquired and how improved or augmented in value. For that purpose, evidence to show the services rendered by the defendant for the plaintiff in enhancing the value of her property was competent, but recovery for the value of those services as such, independent of any division of the property between the parties,

could not be had in this action. In an action for a divorce involving a division of property between the parties, a jury trial is not a matter of right. If the defendant desired a jury trial on the issues presented by him, he should have instituted a separate action therefor. It was not error to refuse to submit this issue to a jury.

3. The defendant urges that "the trial court erred in failing to find that as a matter of law the plaintiff had condoned the conduct and words alleged to be extreme cruelty." The defendant contends that the acts of extreme cruelty complained of by the plaintiff had been condoned by her. That issue was submitted to the court, and the court made finding No. 31. With that finding must be considered finding No. 39, which negatives the contention of the defendant that the plaintiff had condoned his extreme cruelty. There was evidence from which the court could find that voluntary sexual relations had not existed between the plaintiff and the defendant for a long time previous to the commencement of this action.

What is condonation? 1 Bouvier 585 defines the term as follows:

"The conditional forgiveness or remission, by a husband or wife, of a matrimonial offense which the other has committed.

" 'A blotting out of an imputed offense against the marital relation so as to restore the offending party to the same position he or she occupied before the offense was committed.' "

In 19 C. J. 93 the term condonation is defined as follows:

"Condonation in the law of divorce is the forgiveness of an antecedent matrimonial offense on condition that it shall not be repeated, and that the offender shall thereafter treat the forgiving party with conjugal kindness."

In 2 Bishop on Marriage and Divorce, 6th edition, section 33, in discussing condonation it is said:

"Ordinarily, at least, and for the purpose of definition we may assume in all cases, condonation in the law of divorce is a mere inference of law from proven facts. It is the remission, by one of the married parties, of an offense which he knows the other has committed against the marriage, on condition of being afterward treated by the other with conjugal kindness. While the condition remains unbroken, condonation, on whatever motive it proceeded, is a bar to the remedy for the particular injury condoned. The doctrine is founded in natural justice, and it prevails in most civilized countries."

The evidence relied on by the defendant to show that there had been a condonation of the offenses committed by him was that which tended to prove that he and the plaintiff had occupied the same bed after their separation. That fact tended to prove that

there had been a 'condonation of those offenses, but the evidence which showed how they came to occupy the same bed and all the circumstances surrounding that act were consistent with the fact that there had been no condonation. Defendant argues that sleeping with each other established that the plaintiff and the defendant had resumed marital cohabitation. The presumption is that when they occupied the same bed they had sexual relations. The defendant could have testified that he and the plaintiff then had sexual relations with each other if there had been such relations, but he did not so testify. There was evidence which tended to prove that after the separation of the plaintiff and the defendant they had not cohabited as husband and wife.

In 1 Bouvier 519 cohabit is defined as follows:

"To live together in the same house, claiming to be married."

In 11 C. J. 952 cohabitation is defined thus:

"The act or state of dwelling together, or in the same place with another; living together as husband and wife; a living together as man and wife. A condition or status of the parties, a status resembling that of the marital relation. Cohabitation is not a sojourn, nor a habit of visiting, nor even a remaining with for a time; the term implies continuity. It is said that cohabitation in its usual sense implies publicity, since two persons cannot secretly live together. The term is of large signification. Cohabitation may be lawful or it may be illicit. The term as sometimes employed has a very disgraceful meaning. Although it has been held that the term implies sexual intercourse, it seems that, according to the weight of authority, sexual intercourse is not necessarily implied, as the word does not even include necessarily the occupying the same bed."

In 1 Bishop on Marriage and Divorce, 6th edition, section 777, the term is defined in the following language:

"To cohabit is to dwell together. Matrimonial cohabitation is the living together of a man and woman ostensibly as husband and wife."

The evidence was such that different conclusions could have been reached from it. The court could have found that there had been a condonation of the offenses committed by the defendant against the plaintiff, but the evidence was entirely consistent with the finding of the court that there had been no condonation. The evidence tended to prove that there had been no forgiveness, no taking back of the defendant by the plaintiff as her husband, no cohabitation, no agreement, express or implied, to resume the relation of husband and wife. The finding that there had been no condone-

ment was supported by evidence, and that finding cannot be disturbed by this court.

4. The defendant insists that "the trial court committed error in holding that the conduct of the defendant described in the findings constituted extreme cruelty towards the plaintiff as contemplated by the statute." On this question, the findings of the court were sustained by evidence. There was evidence which tended to show that the defendant cursed the plaintiff and called her vile names; that he choked her and struck her; and that he accused her of having sexual relations with other men. That evidence, if believed, justified a finding of extreme cruelty.

Two other matters complained of are that "the trial court committed error in finding that plaintiff and defendant acquired no joint property," and that "the trial court committed error in adjudging that defendant was not entitled to any share of the property." These matters have been carefully examined. The finding complained of was supported by evidence, and there was no error in denying to the defendant any share of the property owned by the plaintiff. It is not necessary to discuss further these propositions.

The judgment is affirmed.