(747 P.2d 187)
No. 60,264

In the Matter of the Marriage of NANCY ANNE WESSLING, *Appellee,* and JOHN W. WESSLING, *Appellant.*

Opinion filed December 17, 1987.

*Stephen M. Joseph* and *Charles E. Millsap,* of Joseph, Robison & Anderson, P.A., of Wichita, for the appellant.

*Keith D. Richey,* of Rumsey, Richey & Plummer, of Wichita, for the appellee.

Before ABBOTT, C.J., DAVIS and SIX, JJ.

DAVIS, J.: John Wessling appeals the dismissal of his motion to reduce support payments to his former spouse, Nancy Wessling. Nancy Wessling cross-appeals the denial of her motion for attorney fees.

John and Nancy Wessling were married on June 8, 1974, and have two children. Difficulties arose, and the couple entered into a property settlement agreement, which was incorporated into a divorce decree on January 11, 1984. The agreement provides that John Wessling's support obligations shall be reduced upon Nancy Wessling's "continuous or continual cohabitation with an unrelated male." The agreement does not define "cohabitation."

In March 1985, Nancy Wessling began a relationship with an "unrelated male." Based upon information obtained through a private investigator, John Wessling filed a motion to modify support payments. At the hearing on the motion, he called Nancy Wessling as his only witness. Nancy Wessling admitted that she was involved in a sexual relationship with an unrelated male and that she had spent the night with him on a number of occasions. She testified, however, that she and the man had an understanding that they were free to date other people, that they never had held themselves out as husband and wife, and that they had no plans to marry. She further testified that, although she and the man had done household chores and other favors for each other, they had maintained separate residences, had not owned joint savings or bank accounts or other joint property, and had not purchased groceries together or shared mortgage or credit card payments.

The trial court granted Nancy Wessling's motion to dismiss, finding the evidence insufficient to establish cohabitation, which the court defined as "a full sharing of bed, board, household duties and tasks with a common goal of living together and sharing income and expenses." The court denied Nancy Wessling's motion for attorney fees.

On appeal, John Wessling contends that the trial court misinterpreted the language, "continuous or continual cohabitation," in the property settlement agreement.

A property settlement agreement incorporated into a divorce decree is "a hybrid in the law having the characteristics of a judgment and retaining the contractual rights of the parties." *In re Estate of Sweeney*, 210 Kan. 216, 224, 500 P.2d 56 (1972). "[T]he confirmation of the agreement and its merger into the decree does not abolish the contractual aspects of the agreement, but leaves the court in the position to construe the provisions of the agreement consistent with the facts and circumstances and the expressed intentions of the parties." 210 Kan. at 224. A written instrument may be construed and its legal effect determined by the appellate court. *Cornwell v. Jespersen*, 238 Kan. 110, 116, 708 P.2d 515 (1985). "The primary rule of construction of a settlement agreement in connection with a divorce action is that, if possible, the court must, as in other contract cases, ascertain and give effect to the mutual intention of the parties at the time the contract was made." *Hollaway v. Selvidge*, 219 Kan. 345, 349, 548 P.2d 835 (1976). The intent of the parties to a separation agreement must be determined from the agreement alone if the terms are unambiguous. *Dodd v. Dodd*, 210 Kan. 50, 55, 499 P.2d 518 (1972).

John Wessling argues that the trial court's definition of "cohabitation" ignores the realities of modern married life, in which "it is no longer uncommon for a married man and woman to live in different cities pursuing separate careers, maintaining separate households, separate finances, separate social lives, and living with each other on weekends or for extended vacations." He contends that "[i]n a contemporary context," cohabitation is "an exclusive sexual relationship with integration of . . . economic and social lives to the extent possible under the circumstances," not a "de facto" marriage.

John Wessling further argues that "[t]he phrase 'continuous or continual' was used to eliminate a duration or permanency requirement from the concept of cohabitation." He places great emphasis upon the distinction between "continual" and "continuous." He argues that "[c]ontinuous cohabitation indeed implies an uninterrupted enduring relationship; continual cohabitation, on the other hand, implies successive recurrences of cohabitation which are very close together." Thus, he concludes

that "repeated short term instances of cohabitation or one continuous instance would be sufficient to result in reduction of [his] support obligation."

Nancy Wessling argues that "cohabitation" means to live together as husband and wife and that the use of "continuous or continual" implies "more of a permanency of relationship than is already implied in the term cohabitation."

We need not resolve the parties' debate over the meaning of "continuous or continual." The reduction clause requires "continuous or continual *cohabitation*." (Emphasis supplied.) Even if John Wessling is correct that "repeated short term instances of cohabitation" trigger the reduction clause, he still must prove that Nancy Wessling *cohabited* with an unrelated male.

"Cohabitation" has an unambiguous, accepted legal meaning. In *Biltgen v. Biltgen*, 121 Kan. 716, 250 Pac. 265 (1926), the court rejected the husband's contention that his wife had condoned his extreme cruelty by cohabiting with him. The court adopted the following definition of "cohabitation":

" 'The act or state of dwelling together, or in the same place with another; living together as husband and wife; a living together as man and wife. A condition or status of the parties, a status resembling that of the marital relation. Cohabitation is not a sojourn, nor a habit of visiting, nor even a remaining with for a time; the term implies continuity.' " 121 Kan. at 721 (quoting 11 C.J. 952).

Other jurisdictions that have considered the meaning of "cohabitation" have arrived at similar definitions. In *Edwards and Edwards*, 73 Or. App. 272, 698 P.2d 542 (1985), the court concluded that " 'cohabitation' has a sufficiently precise legal meaning; it refers to a domestic arrangement between a man and a woman who are not married to each other, but who live as husband and wife, in that, for more than a brief period of time, they share a common domicile and living expenses and are sexually intimate." 73 Or. App. at 278. In *Miller v. Miller*, 352 Pa. Super. 432, 508 A.2d 550 (1986), the court considered the meaning of "cohabitation" in a statute providing for termination of alimony upon the petitioner's cohabitation with an unrelated member of the opposite sex. The court noted that " '[c]ohabitation, although not defined statutorily, is defined by Webster's New Collegiate Dictionary as 'living together as husband and wife.' Similarly, Ballentine's Law Dictionary defines cohabita-

tion as '[a] dwelling together of man and woman in the same place in the manner of husband and wife.' " See *Haddow v. Haddow*, 707 P.2d 669 (Utah 1985); *Taylor v. Taylor*, 11 Ohio App. 3d 279, 465 N.E.2d 476 (1983); *Quisenberry v. Quisenberry*, 449 A.2d 274 (Del. Fam. Ct. 1982).

Perhaps the best definition of "cohabitation" is found in Black's Law Dictionary:

"To live together as husband and wife. The mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but not necessarily dependent on sexual relations." Black's Law Dictionary 236 (5th ed. 1979).

Marriage is the standard by which the trial court must judge whether a couple has cohabited. Contrary to the declaration of the trial court, cohabitation does not necessarily require "a *full* sharing of bed, board, household duties and tasks." (Emphasis supplied.) The circumstances of the relationship, including the realities of modern married life, may be considered by the trial court in determining whether the evidence establishes cohabitation.

Examined in light of the unambiguous, accepted legal meaning of cohabitation, the evidence supports the trial court's finding that Nancy Wessling did not cohabit with an unrelated male. Nancy Wessling and the man have not held themselves out as husband and wife, and they have no plans to marry. They have never maintained a home together and have kept separate residences. They have not shared living expenses. They have not jointly owned any property. In short, they have never "live[d] together as husband and wife." *Biltgen v. Biltgen*, 121 Kan. at 721.

In her cross-appeal, Nancy Wessling contends that the trial court abused its discretion by denying her motion for an award of attorney fees. K.S.A. 1986 Supp. 60-1610(b)(4) gives the trial court broad discretion to award attorney fees. The decision of the trial court will be overturned only upon a showing of abuse of diseretion. *Neis v. Neis*, 3 Kan. App. 2d 589, 594, 599 P.2d 305, *rev. denied* 226 Kan. 792 (1979). "Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court." *Stayton v. Stayton*, 211 Kan. 560, 562, 506 P.2d 1172 (1973).

Nancy Wessling's sole contention is that the trial judge purportedly stated that her attorney fees were her "costs of having a slumber party." This statement does not appear in the record, nor is there anything else in the record that suggests an abuse of discretion.

Affirmed.