No. 90,478

In the Matter of the Marriage of DAVID L. KUZANEK, *Appellant,*
and KAREN K. KUZANEK, *Appellee.*

105 P.3d 1253

Opinion filed February 18, 2005.

*Susan D. Szczucinski,* of Szczucinski Law Firm, of Overland Park, argued the cause and was on the briefs for appellant.

*Richard L. Becker,* of Levy & Craig, P.C., of Overland Park, argued the cause, and *Nathalie C. Elliott,* of the same firm, was with him on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: This appeal requires us to determine whether the district judge erred in denying David Kuzanek's motion to terminate spousal maintenance payments based on Karen Kuzanek's cohabitation with another man. The Kansas Court of Appeals reversed the district judge's decision, and we granted Karen's petition for review.

The Kuzaneks were divorced in June 1999 after 18 years of marriage. David was required to pay Karen $1,500 per month in spousal maintenance for 110 months or until the occurrence of one of several events listed in the court's journal entry. The journal entry included language from the parties' settlement agreement, which provided that maintenance would terminate upon, among other things, "[c]ohabitation of wife with an unrelated adult member of [the] opposite sex for more than 30 days." Neither the journal entry nor the settlement agreement defined "cohabitation."

David moved to terminate spousal maintenance based on Karen's alleged cohabitation with her boyfriend, Robert Potemski. Potemski pays rent to live in the basement of Karen's house. Although he and Karen originally entered into a written lease, the lease had expired by the time of the hearing on David's motion.

Karen testified that she and Potemski entered into their living arrangement because she needed rental income to be able to stay in her house and keep the parties' children in their schools. Karen was unemployed from August 2001 until January 2002, and David was not making regular maintenance or child support payments. Potemski moved in because Karen trusted him with the children and she did not want to rent to a stranger. David had moved about an hour away from Johnson County, where Karen and the children lived and where the divorce was granted.

Potemski testified that he initially signed a 1-year lease and paid rent of $525 every month under that lease. In the second year, his rent was raised to $600 per month.

Some rooms of the house are accessible to Potemski only after he has received specific permission to use them; Karen and the children do not have access to his portion of the house without such specific permission. Potemski has a private entrance.

Potemski stores some of his clothes in Karen's bedroom, and his computer is kept in Karen's room. The computer had been put there before Potemski moved in; it was there because he allowed Karen and the children to use it, and they wanted to be able to supervise the children's computer use.

Potemski purchases his own groceries and Karen purchases groceries for herself and the children. Potemski has been reimbursed

for taking one of the children to McDonald's. Potemski does some household chores, including loading the dishwasher, laundry, and occasional cooking. He had begun to do Karen's and the children's laundry before he moved in, in exchange for permission to use the family's laundry facilities. This arrangement has endured.

Potemski spent Christmas in 2002 with Karen and her children. Potemski has held a medical power of attorney for the children since 4 months before he moved into the house. The evidence also showed that he attended one of the children's sporting events.

Potemski has occasionally lent money to Karen and been repaid. He and Karen do not otherwise share finances or have control over one another's money; they own no joint property. They do not introduce one another as a spouse and do not otherwise represent to others that they are husband and wife. Both admit they have not dated anyone else in nearly 4 years, but they say they remain free to do so. Potemski has slept in Karen's room only once, and he and Karen have had sexual relations fewer than 10 times since he moved into the house.

On this evidence, the district court judge held that David had failed to meet his burden of proving cohabitation. The judge employed the following definition of cohabitation, established in a 1987 Court of Appeals decision and followed in a 2001 Court of Appeals decision: "[Living] together as husband and wife [and] mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but not necessarily dependent on sexual relations." *In re Marriage of Wessling*, 12 Kan. App. 2d 428, Syl. ¶ 6, 747 P.2d 187 (1987); see *In re Marriage of Kopac*, 30 Kan. App. 2d 735, Syl. ¶ 2, 47 P.3d 425 (2002).

Neither party challenged the adequacy or appropriateness of this definition. In fact, Karen's attorney emphasized *Kopac* in her argument to the district judge. This approach was consistent with the Johnson County Family Law Guidelines, which cite *Wessling* for the controlling definition of cohabitation.

A panel of our Court of Appeals reversed, stating that its duty was "to determine whether the trial court's findings of fact are supported by substantial competent evidence and whether the

findings are sufficient to support the trial court's conclusions of law." *In re Marriage of Kuzanek*, 32 Kan. App. 2d 329, 332, 82 P.3d 528 (2004).

Like the district court, the Court of Appeals panel characterized the definition of cohabitation from *Kopac* as controlling, echoing that case's description of the definition as "unambiguous" and "accepted." 32 Kan. App. 2d at 330. However, the panel found it necessary to add:

"The definition of cohabitation supplied by the courts is most imprecise in actual practice and application. This court appreciates the difficulty of applying this concept to any particular case. While many of the common attributes of marriage should be considered and are important to any decision involving cohabitation, the court must also focus upon the financial aspects of the matter. In Kansas, spousal maintenance is predicated upon financial need and financial ability. [Citation omitted.]

"Where a significant relationship exists between an individual receiving spousal support and an unrelated adult of the opposite sex which carries colorable attributes of a marriage-like relationship, and where the unrelated adult supplies a material financial gain or benefit, either through direct exchange of money or in kind services to the one receiving spousal support, then it is cohabitation within the context of domestic law in Kansas." 32 Kan. App. 2d at 330-31.

The panel then proceeded to reexamine the evidence presented to the district court judge, labeled the lease between Karen and Potemski as a sham, and said the "trial court's reliance on the parties' written lease to refute a finding of cohabitation [was] misplaced." 32 Kan. App. 2d at 332.

Our analysis begins with identification of the correct standard of review. We acknowledge that the previous cases have been less than clear on this point. See *Kopac*, 30 Kan. App. 2d at 737 (referencing multiple standards of review: "substantial competent evidence to support the trial court's ruling and whether the trial court has abused its discretion," "negative finding of fact," and "trial court did not abuse its discretion in entering the negative finding").

The correct appellate standard of review when a party has failed to sustain its burden of proof is the one applied to a negative finding of fact. At times, in order to arrive at a finding of fact, a legal definition must be applied. This is true of cohabitation. The determination of its existence raises an issue of fact, but the fact finder

must employ a legal definition of cohabitation in order to arrive at its finding. If cohabitation exists, then the district court must make a legal determination whether maintenance should be terminated.

Here, David challenges the district court's negative finding of fact that Karen and Potemski did not cohabitate. That negative finding will not be rejected on appeal unless the party challenging the finding proves arbitrary disregard of undisputed evidence, or some extrinsic consideration such as bias, passion, or prejudice. *Mynatt v. Collis,* 274 Kan. 850, 872, 57 P.3d 513 (2002). ·

Even if the Court of Appeals panel had identified this correct standard of review, which it did not, its eventual decision plainly depended upon something other than the restrained approach dictated by the standard. It stated:

"It is undisputed that Karen leased rooms in her home to Potemski, with whom she had a significant long-term romantic relationship, which included occasional sexual relations. Karen contends that notwithstanding these facts, her relationship with Potemski was essentially a landlord/tenant relationship with a written lease. This is a suspect contention. At the time of the hearing, Potemski had lived in Karen's home with her and her two children for approximately 1 year. He did not maintain a separate residence. Potemski kept some of his clothes and his computer in Karen's bedroom. They had an exclusive sexual relationship for approximately 4 years. Potemski had attended some of Karen's children's school functions and had power of attorney to authorize medical treatment of the children. He purchased sports equipment for one child and sometimes gave the children money. Potemski was listed as a contact person on one of the children's sports rosters. He spent Christmas with Karen and her family, did household chores, occasionally cooked for the family, babysat the youngest child without compensation, and provided Karen's oldest child with a cell phone. Potemski testified that he generally bought his own groceries and paid rent to Karen as a tenant in her home. He admitted to doing the family's laundry in exchange for the use of the laundry facilities.

"The nature and extent of the relationship between Karen and Potemski is clearly not that of a landlord/tenant or a mere friend. Tenants and mere friends simply do not commonly conduct themselves in the manner that Karen and Potemski have." 32 Kan. App. 2d at 331.

It is abundantly clear that the Court of Appeals panel took it upon itself to reweigh the evidence and the credibility of the witnesses. These are not functions of the appellate court. See *Blair Constr., Inc., v. McBeth,* 273 Kan. 679, 687, 44 P.3d 1244 (2002).

Finally, the panel also strayed from the definition established by *Wessling* and endorsed by *Kopac*, even though *Kopac* was its only guiding authority for the meaning of the word "cohabitation," as used by the parties in the settlement agreement and by the district court in the journal entry. The panel took this step despite the fact that the parties had sought no modification of that definition in the district court.

We choose not to question the adequacy and appropriateness of the *Wessling/Kopac* cohabitation definition without full development of a supporting factual record in the district court and full briefing and argument by at least one party favoring its modification. Our research has revealed varied definitions in our sister states, and some Kansans may doubt the *Wessling/Kopac* definition's modern utility. We leave that discussion for another day when the contours of that definition have been fully litigated in the district court.

Until then, divorcing parties, the lawyers who represent them in fashioning settlement agreements, and the district judges and arbitrators who draft journal entries and final decrees and orders in divorce cases will know that they can rely on the *Wessling/Kopac* definition of cohabitation. If parties wish to depart from that definition, they must explicitly define the word otherwise. As the Kansas Bar Association's Family Law Handbook alerts domestic relations law practitioners:

"Practitioners should carefully discuss with their clients termination of maintenance due to cohabitation in any case in which maintenance is provided for in a settlement agreement. Most lay persons will believe that 'cohabitation' occurs anytime the ex-spouse lives with a member of the opposite sex. Your client will not have in mind the legal definition found in the *Wessling* case and other cases. During negotiation, depending upon the bargaining position in the case, you may be able to get a definition of cohabitation agreed upon that is closer to your client's expectation than would otherwise be the case." Blaylock & Lambdin, Property Division and Maintenance in 1 Practitioner's Guide to Kansas Family Law § 4.63, Comment (Leben ed. 2003).

In this case, based on the applicable *Wessling/Kopac* definition of cohabitation, we see no basis for an argument that the district court judge arbitrarily disregarded undisputed evidence or was in-

fluenced by some extrinsic consideration such as bias, passion, or prejudice. Although certain evidence favored David's view of his ex-wife's living arrangement, that testimony did not go unchallenged. In addition, no bias, passion, or prejudice on the part of the district court judge is even alleged, much less demonstrated. We hold that the Court of Appeals erred in selecting the applicable standard of review, in reweighing the evidence before the district court, and in modifying the *Wessling/Kopac* definition.

The Court of Appeals is reversed. The district court is affirmed.