NOT DESIGNATED FOR PUBLICATION

No. 119,705

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

SHANNON E. CREAGH, f/k/a SHANNON E. HOFF,
*Appellee*,

and

DAVID T. HOFF,
*Appellant*.

MEMORANDUM OPINION

Appeal from Riley District Court; JOHN F. BOSCH, judge. Opinion filed August 23, 2019.
Affirmed.

*Melissa D. Richards*, of Weary Davis, L.C., of Manhattan, for appellant.

*Todd A. Luckman*, of Stumbo Hanson, L.L.P., of Topeka, for appellee.

Before HILL, P.J., STANDRIDGE, J., and NEIL B. FOTH, District Judge, assigned.

PER CURIAM: David T. Hoff appeals a district court order denying his motion to terminate spousal maintenance owed to ex-wife Shannon E. Creagh, alleging she cohabitated with another man in violation of the parties' separation agreement. The parties divorced by agreement on November 10, 2014. Creagh and Hoff executed settlement documents, which the district court adopted and incorporated into the final Journal Entry and Decree of Absolute Divorce. Pursuant to the agreed terms, Hoff was ordered to pay $900 per month in maintenance to Creagh beginning October 1, 2014. The parties also agreed that maintenance would terminate upon the first of the following: (1)

1

the passing of 84 months; (2) Creagh's death; (3) Creagh's remarriage; or (4) Creagh's cohabitation with an unrelated adult male in a marital-type relationship. Cohabitation was not further qualified or defined.

Three years later, Hoff moved to terminate spousal maintenance, alleging that Creagh had been cohabitating with her fiancé, David Anderson, in a marital-type relationship for "a number of months." Creagh denied that she and Anderson were cohabitating. The district court heard the motion and agreed with Creagh, leaving the maintenance order in place.

On appeal, Hoff argues that the district court failed to apply the proper legal definition of cohabitation and thus abused its discretion. Hoff further argues that the district court arbitrarily disregarded undisputed evidence of cohabitation, and instead exhibited bias, passion, or prejudice by basing its decision primarily on Creagh's religious beliefs and associated lack of sexual relations. This court disagrees and affirms the district court.

*Summary of the Facts*

Anderson moved from Arizona to Kansas in July 2016, after dating Creagh long distance for "quite some time." In September 2016, Creagh and Anderson got engaged. The couple quickly became financially entangled. In August 2016, Creagh added Anderson as a joint tenant on one of her bank accounts, stating that she wanted to make sure somebody could financially care for her children if something happened to her. Anderson transferred money into their joint account several times when Creagh struggled to make ends meet. Between August 2016 and January 2018, Anderson made approximately 23 transfers from his bank account to the couple's joint bank account. Hoff contended these transfers totaled over $11,000. The transfers were usually designated by memo for rent or bills. Two tax refunds went into the joint account. Hoff contended that

one of these, over $6,000, belonged to Anderson. Anderson wrote a few checks out of the joint account. Creagh received thousands of dollars of support from Anderson's mother, either directly or through Anderson, depending on the testimony. The couple was on a joint cell phone plan. Anderson served as a cosigner on Creagh's car loan when she failed to qualify, and he was also on the title. Anderson used Creagh's address on the loan documents. Anderson testified that he gave approximately $8,000 to Creagh during this period because she was his best friend, they were engaged, and he wanted to see her succeed. He also stated that about half of the money provided to Creagh came from his mother.

On a personal level, Creagh and Anderson were extensively involved as one would expect of an engaged couple. However, Creagh maintained she and Anderson did not live together, were not financially obligated to each other, and did not have sex as it would be inconsistent with their membership in the Church of Jesus Christ of Latter-Day Saints. Creagh testified she and Anderson did not spend much time together because of conflicting work schedules, but he had been at her house four times in the week before the hearing. He spent from 20 minutes to an hour and a half at her house during those visits. She estimated Anderson spent the night at her house about two times per month, and when he did stay the night, he slept on the couch in the basement. Anderson could not access Creagh's house, but he had the garage door opener in the past to use on an as-needed basis to let the dog out or pick the kids up for activities or appointments when Creagh could not do so. Anderson testified that he occasionally mowed Creagh's lawn, helped with landscaping, and assisted with minor repairs in the house. Creagh and Anderson took five weekend trips together between June 2015 and October 2016. They testified that they stayed with family or friends and never shared a room. They were still engaged at the time of the hearing, but there was no testimony regarding when they might marry.

3

Hoff also contended Anderson was involved in the lives of Creagh's two minor children, ages 15 and 16 at the time of the hearing. Anderson was one of three emergency contacts at the children's school. He had taken the children to extracurricular activities when Creagh had been unable. However, Anderson did not consistently attend the children's extracurricular activities and they did not call him "dad."

Creagh countered Hoff's assertion that she and Anderson cohabitated by testifying that they had not held themselves out to be husband and wife; they each had separate credit cards and bank accounts; they had never been on each other's leases or utilities; and they filed their taxes individually. Though Anderson cosigned Creagh's auto loan, he only did so because she was denied on her own credit and she had made every payment on that loan.

Regarding Anderson's residence, the couple contended that since April 2017 Anderson had lived with one of Creagh's elderly clients as a house guest. In place of rent and utilities, he took care of landscaping and work around the house. He had no lease agreement with the homeowner. Anderson testified that he kept his clothing at this house and did not keep clothing at Creagh's residence.

*The District Court Ruling*

The district court ruled from the bench. It cited *In re Marriage of Kuzanek*, 279 Kan. 156, Syl. ¶ 1, 105 P.3d 1253 (2005), in determining that "Kansas has defined cohabitation to mean living together as husband and wife and mutual assumption of those marital rights, duties, and obligations that are usually manifested by married people including but not necessarily dependent on sexual relations."

4

The district court also quoted an older definition of cohabitation as:

> "'The act or state of dwelling together, or in the same place with another; living together as husband and wife; a living together as man and wife. A condition or status of the parties, a status resembling that of the marital relation. Cohabitation is not a sojourn, nor a habit of visiting, nor even a remaining with for a time; the term implies continuity.'" *Biltgen v. Biltgen*, 121 Kan. 716, 721, 250 P. 265 (1926) (quoting 11 C.J. 952).

The district court further cited *In re Marriage of Wessling*, 12 Kan. App. 2d 428, 747 P.2d 187 (1987), a case that approves the above language from *Biltgen*. The district court explained that marriage is the standard by which it would measure cohabitation and it would consider the circumstances of the relationship, including the realities of modern married life, in determining whether Hoff met his burden of showing Creagh and Anderson were cohabitating.

In its oral ruling, the district court reviewed and considered various aspects of the evidence in support of Hoff's claim of cohabitation. The court found no evidence regarding how Creagh and Anderson met but that Anderson moved to Kansas from Arizona in the summer of 2016. Anderson and Creagh bought an engagement ring soon after, and he reimbursed her for it in August. They got engaged in September 2016 and were still engaged at the time of the hearing in May 2018, although there was no evidence regarding when they planned to marry.

The district court also considered other evidence supporting Hoff's claim of cohabitation including the almost monthly transfers of money Anderson made into the joint account. The court looked at bank statements, totaled the transactions, and concluded Anderson transferred $8,975 to Creagh. The court found that half of the money had come from Anderson's mother as a gift to Creagh, so she did not have to donate plasma to make ends meet. The court found Creagh's monthly bills ran up to $4,000 and she made much less. The court noted Creagh's phone bill ranged between

5

$184 and $293 per month, and the testimony was that Anderson paid $125 of the bill. The district court found that Anderson cosigned Creagh's auto loan after she had been denied on her own credit, and both of their names were on the title. The court also noted the couple's several short trips together.

Citing evidence that cuts against a finding of cohabitation, the district court found that Anderson's payments to Creagh were not consistent. He transferred money to her when she needed funds, but never a consistent percent of the rent or certain bills. Some of Anderson's transfers into the joint bank account were reimbursements because Creagh had paid for certain items for him. The court concluded Anderson's financial support to Creagh was purely altruistic because she was his fiancée. The court found Creagh and Anderson had separate bank accounts and filed their taxes separately. Though Anderson used Creagh's address on documents occasionally, he did not do so regularly. The court held Anderson was not legally obligated to Creagh's lease or utilities and did not share in her expenses or finances.

The district court found Creagh's and Anderson's testimony that they abstained from sex because of religious reasons to be credible and found this to be "one of the more important factors that I see here. Not the sole factor but one of the factors . . . ." Significantly, the district court found that Anderson spent the night at Creagh's home only two nights per month, that he slept on the basement couch, and that they never shared a room when they travelled. The court also found that Anderson did not keep his possessions or clothes at Creagh's residence. Citing *Wessling*, the district court found that cohabitation means living together, including but not dependent on sexual relations; that while the law does not require full sharing of bed, board, household duties, and tasks, it determined that even when considering the modern realities of life, the evidence did not support a finding of cohabitation. The district court went on to conclude that "every case is separate, and you have to look at the totality of the circumstances, and all the facts

6

surrounding this particular scenario. And when I do that, and I look at all these facts here, it's rather clear to this Court that these folks are not cohabitating."

*Standard of Review*

The district court found that Hoff failed to sustain his burden of proving that Creagh had cohabitated with Anderson in contravention of the property settlement agreement. A district court finding that a party did not meet its burden of proof is a negative finding.

> "The effect of a negative finding by a trial court is that the party upon whom the burden of proof is cast did not sustain the requisite burden. Absent arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion or prejudice the finding of the trial judge cannot be disturbed. An appellate court cannot nullify a trial judge's disbelief of evidence nor can it determine the persuasiveness of evidence which the trial judge may have believed." *Highland Lumber Co., Inc. v. Knudson*, 219 Kan. 366, Syl. ¶ 5, 548 P.2d 719 (1976).

See *Kuzanek*, 279 Kan. at 159. The appellate court must consider whether the district court arbitrarily disregarded undisputed evidence or relied upon some extrinsic consideration such as bias, passion, or prejudice to reach its decision. The question of cohabitation raises an issue of fact but requires the fact-finder to apply its legal definition in making the determination. 279 Kan. at 159-60.

*Analysis*

Hoff's claim that the district court disregarded the legal definition of cohabitation and arbitrarily disregarded undisputed evidence is not supported by the record. As detailed above, the district court's ruling considered and discussed numerous factors supporting Hoff's claim. These included Creagh's engagement, the couple's commingling

7

of money, Anderson's extensive financial support of Creagh, the cosigning of her auto loan, the shared cell phone plan, the possible sharing of his income tax refund, and the couple's trips together. After reciting the evidence weighing against cohabitation, the district court stated that it had considered all the facts and circumstances, that it considered the case on its individual merits, and that it was clear that Creagh was not cohabitating.

The district court did state that Creagh and Anderson's religiously motivated chaste lifestyle was a significant factor in its considerations but also specifically stated it was not the only factor. The district court was duty bound to consider these facts, not only under the definition of cohabitation in *Wessling* and other caselaw but in construing the parties' own contract prohibiting cohabitation in a "marital-type relationship." Considering the district court's ruling in its entirety, this aspect of the evidence was not the exclusive or even primary basis for the court's decision.

The inescapable problem with Hoff's motion and his arguments on appeal is that Creagh and Anderson did not reside together. The district court specifically found that Anderson spent approximately two nights a month at Creagh's residence, that he did not keep his clothing or other belongings there, and that he maintained a separate residence. Although Hoff may have had doubts about the couple's claims, he presented no direct evidence to the contrary and does not argue on appeal that these were mistaken findings of fact. He simply argues that other factors are more important.

All appellate precedent cited by Hoff and the district court defining cohabitation begin with the phrase "living together." *Wessling* goes on to incorporate and approve the *Biltgen* language: """The act or state of dwelling together, or in the same place with another . . . . Cohabitation is not a sojourn, nor a habit of visiting, nor even remaining

8

with for a time; the term implies continuity.'" [Citations omitted.]" *Wessling*, 12 Kan. App. 2d at 431.

Significantly, the parties resolved their divorce by settlement, rather than a court trial. "A property settlement agreement incorporated into a divorce decree is 'a hybrid in the law having the characteristics of a judgment and retaining the contractual rights of the parties.'" *Wessling*, 12 Kan. App. 2d at 430 (quoting *In re Estate of Sweeney*, 210 Kan. 216, 224, 500 P.2d 56 [1972]). "'The primary rule of construction of a settlement agreement in connection with a divorce action is that, if possible, the court must, as in other contract cases, ascertain and give effect to the mutual intention of the parties at the time the contract was made.'" *Wessling*, 12 Kan. App. 2d at 430 (quoting *Holloway v. Selvidge*, 219 Kan. 345, 349, 548 P.2d 835 [1976]). Further, the intent of the parties to a separation agreement must be determined from the agreement alone if the terms are unambiguous. *Dodd v. Dodd*, 210 Kan. 50, 55, 499 P.2d 518 (1972).

Parties are generally free to contract for any terms they choose regarding termination of maintenance. For example, they can agree to terminate maintenance if the recipient gets engaged, receives significant financial support from another, or engage in any other "marital-type" behavior they may specify. They are also free to define cohabitation differently than Kansas caselaw defines it. These parties' separation agreement calls for termination of Creagh's maintenance if she cohabitates with another person as defined by two criteria. First, she must cohabitate with an unrelated male. Second, the cohabitation must be part of a "marital-type relationship." In this contractual separation agreement, these are the only conditional modifiers of the term "cohabitation." In other words, the modifiers define the roommate. Under the terms of this agreement, for

9

example, Creagh would presumably be free to live with a female, related or unrelated, in a marital-type relationship without jeopardizing her maintenance.

Hoff does not agree with such a literal interpretation of caselaw definitions or the parties' contract. He argues that being in a marital-type relationship *is* cohabitation, rather than being a maintenance-terminating condition of it; that being in a marital-type relationship is cohabitation regardless of whether parties reside together. He essentially argues that the court should apply a constructive definition of cohabitation; that if the relationship is sufficiently "marital-like" in character, then residing together does not matter. In support of this argument, Hoff primarily relies on *In re Marriage of Solar*, No. 102,631, 2010 WL 4156761 (Kan. App. 2010) (unpublished opinion), wherein this court affirmed the district court's finding of cohabitation even though the couple in question maintained separate residences. However, the *Solar* case is easily distinguished. That couple admitted that they spent most nights together, and the district court found that the couple spent almost all their nights together at one residence or the other. Contrary to the dicta cited by Hoff, physical cohabitation was still the touchstone of the case. Further supporting the termination of maintenance under the *Wessling* definition of cohabitation, the *Solar* couple did not dispute a marital-like relationship, including extensive financial and social entanglements.

Considering the district court's stated weighing of findings both for and against a conclusion of cohabitation, including the uncontested findings that Creagh and Anderson did not live together, Hoff has failed to show that the district court arbitrarily disregarded applicable caselaw or undisputed evidence. This court has no basis to expand the common law definition of the term cohabitation beyond the Black's Law Dictionary

10

definition adopted by *Wessling* and *Kuzanek*, or to interpret the parties' separation agreement in some way other than its unambiguous meaning.

Hoff's second argument is rejected as well. The district court did not solely or improperly rely on Creagh's and Anderson's abstinence for religious reasons, as discussed above. Further, there is nothing about the district court's discussion of these facts or this issue that implies bias, passion, or prejudice against Hoff or in favor of Creagh. Hoff provides no support for his argument other than to quote isolated passages from the transcript in which the district court addressed the religious foundation of Creagh's and Anderson's abstinence. Hoff's assertion that if Creagh had not been religious, the district court would have found that she and Anderson were cohabitating is unsubstantiated speculation.

Creagh's motion for attorney fees is denied. The district court's judgment is affirmed.