NOT DESIGNATED FOR PUBLICATION

No. 122,344

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

MARK E. STEGMAN,
*Appellant*,

and

PATRICIA D. STEGMAN,
*Appellee*.

MEMORANDUM OPINION

Appeal from Seward District Court; LINDA P. GILMORE, judge. Opinion filed December 18, 2020. Affirmed.

*Kelly Premer Chavez*, of Tahirkheli & Premer-Chavez Law Office, LLC, of Liberal, for appellant.

*Tessa M. French*, of Miller & French, LLC, of Liberal, for appellee.

Before ARNOLD-BURGER, C.J., POWELL and GARDNER, JJ.

PER CURIAM: Mark Stegman appeals the district court's spousal maintenance award of $1,700 a month for 10 years for his ex-wife, Patricia Stegman. Finding no abuse of discretion, we affirm.

1

*Factual and Procedural History*

Mark petitioned to divorce Patricia in November 2018. At the divorce trial, the parties presented the district court with a property settlement agreement. Although the property division issues went substantially uncontested, the parties disputed how much spousal maintenance Mark would pay Patricia and whether Mark was required to pay Patricia's attorney fees. Before trial, Patricia requested $2,000 a month in spousal maintenance for 10 years. Mark never argued that he should not pay Patricia spousal maintenance but asked that the district court limit the award to $800 a month for five years. Ultimately, the district court awarded Patricia monthly maintenance of $1,700 for 10 years based in part on the following facts presented at trial.

*Trial Testimony*

Mark and Patricia were married for 34 years and were 56 and 57 years old at the time of trial. They have six adult children.

Mark testified that he has worked as a substation metering technician at Southern Pioneer Electric since 1981 and is paid at an hourly rate of around $41.24. He sometimes accumulated several hours of overtime pay and regularly received annual raises. At trial, Mark projected that he would earn around $103,584 in 2019, and that he typically earned from $90,000 to over $100,000 a year. Mark testified that he lived with his girlfriend and thus did not have any significant expenses of his own, except when he occasionally bought groceries. Mark was, however, still paying the mortgage and other expenses—such as gas, cable, water, and lights—for his and Patricia's marital home, where Patricia lived during most of the underlying divorce proceedings. Patricia also continued to use the couple's joint account for groceries and other expenses.

For most of the marriage, Patricia worked at home, caring for the children and the home. She had worked sporadically at various companies until 2010, when she received an associate degree. From 2010 to 2014, Patricia worked full-time as a college secretary, earning around $11 an hour. She enjoyed that job and would like to return to it if she were physically able to do so. But Patricia was fired from that position in 2015 because she suffered from a brain injury that left her unable to perform her job duties.

Patricia testified that in 1997, she experienced bleeding in her brain which caused seizures, short-term memory loss, and loss of her peripheral vision. Although her symptoms have improved, she continues to collapse from exhaustion, has short-term memory loss, and is irritated by bright lights. She avoids loud gatherings and remains limited in the type of work she can perform—she could not return to her secretary position because it would require significant time in bright lights and in front of a computer. Still, Patricia is still healing and getting better, although very slowly.

Patricia had applied for disability benefits, but her application was denied, finding that she remained qualified to work in several positions. She regularly watched her two-year-old grandson two to three days a week for six to seven hours a day, yet without compensation. Patricia acknowledged that she would likely lose her ability to babysit because she would need to become gainfully employed after her divorce. She agreed that one day she could become employed and earn $10 to $11 an hour, but she admitted that she had not actively looked for a job since Mark filed for a divorce in 2018.

Patricia's itemized budget totaled $3,300 a month. She projected that she would spend $1,000 a month on rent for an apartment, and that she had expenses including yearly doctor's appointments, medical insurance, car insurance, cable, internet, phone, and water. She requested $800 for food, toiletries, and cleaning supplies, and $50 a month to have her hair and nails done. But overall, Patricia testified that she was not an exorbitant spender.

On cross-examination, Patricia conceded that once she lived in a smaller place, she would likely not need $800 a month for food, toiletries, and cleaning expenses. She also recognized that after the parties' debts were paid, she would likely receive around $50,000 from the sale of the marital home and around half of Mark's $380,000 retirement account. She conceded that she could likely support herself with that money in conjunction with the money she could possibly make through part-time employment, without additional support payments.

Mark agreed that Patricia did not generally spend excessively but disagreed with some of Patricia's specific budget items. Still, Mark agreed that Patricia was not exaggerating when she testified about having significant physical limitations and agreed that she needed financial assistance. And although Mark testified that he had found low income housing that Patricia could potentially qualify to live in, he did not feel that Patricia should have to move into low income housing to make ends meet. But Mark testified that Patricia should be required to work and that she could possibly make more than $11 an hour because wages had increased since Patricia had last worked.

*District Court's Ruling and Appeal*

The district court entered a divorce decree and adopted the parties' property division agreement. In a separate order, the district court awarded Patricia spousal maintenance in the amount of $1,700 a month for 10 years. The district court reduced the amount of the award by the amount Mark was still paying toward the parties' mortgage until the home was sold.

Mark timely appeals from the district court's decision, asserting the court abused its discretion in its spousal maintenance award.

4

*Standard of Review and Basic Legal Principles*

The purpose of spousal maintenance is to provide for the future support of the divorced spouse. *In re Marriage of Hair*, 40 Kan. App. 2d 475, 484, 193 P.3d 504 (2008). Under the controlling statute, a district court may award spousal maintenance in an amount the court finds to be "fair, just and equitable under all of the circumstances." K.S.A. 2019 Supp. 23-2902(a).

This statute vests the district court with wide discretion in deciding to award spousal maintenance and in determining the amount of maintenance to award. *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 706-07, 229 P.3d 1187 (2010). We will not disturb the district court's decision unless the party asserting error establishes that the district court's decision was a clear abuse of discretion. *In re P.J.*, 56 Kan. App. 2d 461, 466, 430 P.3d 988 (2018) (petitioner bears the burden of proving abuse occurred); *In re Marriage of Day*, 31 Kan. App. 2d 746, 758, 74 P.3d 46 (2003) (clear abuse of discretion standard). When the district court's findings supporting maintenance are supported by the evidence, this court will not second guess the district court's decision. See *Hair*, 40 Kan. App. 2d at 484 (citing *Carlton v. Carlton*, 217 Kan. 681, 681, 538 P.2d 727 [1975]).

A judicial action constitutes an abuse of discretion if: (1) no reasonable person would take the view adopted by the district court; (2) the action is based on an error of law; or (3) the action is based on an error of fact. *Biglow v. Eidenberg*, 308 Kan. 873, 893, 424 P.3d 515 (2018); see *Hair*, 40 Kan. App. 2d at 483-84. If reasonable persons could differ as to the propriety of the action taken by the district court and there is no mistake of law, it cannot be said that there has been an abuse of discretion. *In re Marriage* of *Bradley*, 282 Kan. 1, 7, 137 P.3d 1030 (2006).

The amount of maintenance is to be based on the need of one of the parties and the ability of the other party to pay. *Hair*, 40 Kan. App. 2d at 484. In determining whether to award maintenance, the district court should consider the following factors:

"(1) the age of the parties; (2) the parties' present and prospective earning capabilities; (3) the length of the marriage; (4) the property owned by the parties; (5) the parties' needs; (6) the time, source, and manner of acquisition of property; (7) family ties and obligations; and (8) the parties' overall financial situation." *Hair*, 40 Kan. App. 2d at 484.

Citing *Williams v. Williams*, 219 Kan. 303, 306, 548 P.2d 794 (1976) (establishing the use of these eight factors).

*The District Court's Decision Was Not Based on a Mistake of Law.*

Mark first asserts that the district court's decision was based on a mistake of law because the spousal maintenance award was not "fair, just, and equitable" and thus violated K.S.A. 2019 Supp. 23-2903.

The record shows that the district court considered K.S.A. 2019 Supp. 23-2903, the *Williams* factors outlined above, and other relevant caselaw in deciding spousal maintenance. The district court also specifically found that the amount of $1,700 was "fair, just, and equitable under all the circumstances." So we find that the district court applied the correct law and deny Mark's claim that the district court's decision was an abuse of discretion because it was based on a mistake of law. Because Mark does not argue that the district court's decision was based on an error of fact, he must prove that no reasonable person would have taken the view adopted by the district court. *Bradley*, 282 Kan. at 7.

*The District Court Properly Considered the Facts of This Case and a Reasonable Person Could Adopt the District Court's Decision Regarding Spousal Maintenance.*

We view Mark's argument as more generally challenging the overall propriety of the district court's decision. We also note that although Mark refers to K.S.A. 2019 Supp. 23-2902 and relevant caselaw providing the basic legal principles and standard of review applicable in reviewing this issue, he does not support his claims with pertinent authority. He thus risks a ruling that his arguments are waived or abandoned. See *In re Adoption of T.M.M.H.*, 307 Kan. 902, 912, 416 P.3d 999 (2018).

Again, the purpose of spousal maintenance is to provide for the future support of the divorced spouse. Generally, the amount of maintenance is based on the needs of one of the parties and the ability of the other party to pay. *Hair*, 40 Kan. App. 2d at 484.

Mark focuses on the *Williams* factors, arguing that the district court failed to consider factors two, five, and eight in making its maintenance decision. Those factors require that the district court consider the parties' present and prospective earning capabilities, needs, and overall financial situation. See *Hair*, 40 Kan. App. 2d at 484. Mark focuses primarily on Patricia's lack of need for spousal maintenance and her physical ability to work. Without accepting Mark's argument that the record shows Patricia does not need financial support, we note that "the parties' needs" is only one of many factors that a district court must consider in making spousal maintenance decisions. See *Williams*, 219 Kan. at 306; *Hair*, 40 Kan. App. 2d at 484. As detailed below, the record shows that the district court properly considered the relevant factors—including factors two, five, and eight.

With regard to the second factor, the record shows that the district court made findings regarding both parties' past and present income and work experience. The district court also considered Patricia's education level and her physical restrictions.

7

Contrary to Mark's assertion, the district court did not base its ruling on a finding that Patricia would never be able to work. Instead, the district court found that Patricia was able to work full time earning a minimum wage. This finding is supported by evidence showing that Patricia was able to babysit regularly, even though she suffered various physical ailments. And although Mark argues that Patricia could make more than minimum wage because she obtained an associate degree, the record shows that the district court considered Patricia's education level before awarding spousal maintenance.

Additionally, Mark did not make this argument in the district court. Instead, Mark argued that the parties did not know what Patricia's earning capacity was because she had not looked for a job. We are not in the position to determine this factual question on appeal. See *In re Marriage of Kuzanek*, 279 Kan. 156, 160, 105 P.3d 1253 (2005) (reweighing evidence and witness credibility is not a function of appellate court); see also *In re Marriage of Munker*, No. 95,609, 2007 WL 3275894, at *8 (Kan. App. 2007) (unpublished opinion) (applying *Kuzanek* and dismissing appellant's attempt to relitigate factual questions).

Although the district court made several factual findings supporting its decision regarding the parties' needs under the fifth *Williams* factor, Mark contends that the district court disregarded Patricia's testimony that she would be able to live and support herself with the money that would eventually come from the sale of the parties' marital home and her portion of Mark's retirement. Again, Mark fails to establish that the district court did not consider Patricia's testimony. Additionally, our appellate courts have consistently held that property division and spousal maintenance serve different functions, affirming that each issue warrants separate analysis. See, e.g., *In re Marriage of Traster*, No. 117,410, 2018 WL 1973446, at *11 (Kan. App. 2018) (unpublished opinion) (quoting *In re Marriage of Bowers*, 23 Kan. App. 2d 641, 645, 933 P.2d 176 [1997], and *Beck v. Beck*, 208 Kan. 148, 149, 490 P.2d 628 [1971]).

Finally, Mark maintains that the district court failed to consider the parties' overall financial situations as provided in the eighth *Williams* factor and instead focused too narrowly on Mark's ability to pay. Here, Mark argues that Patricia should not be "rewarded" because she "basically sat around and did nothing." But the record shows that the district court considered both parties' overall financial situation. The district court's finding that Mark "clearly ha[d] the ability to pay maintenance" is supported by sufficient evidence at trial:

> "The Petitioner did not present a budget to the court. Even assuming Petitioner's monthly expenses are as high as Respondent's with an estimate of $2700.00 per month, the court notes estimated take home pay is $6900.00 per month. This results in an estimated surplus of $4200.00 per month after a deduction of $2700.00 per month for assumed expenses."

Also, although the district court noted that Patricia's budget "was not a lavish one," it also recognized that Mark paid the "entirety of the house bills," including the parties' mortgage and other expenses during the pendency of the underlying divorce proceedings. And the district court appropriately reduced Mark's spousal maintenance obligations by the amount of the house payment until the house was sold.

*Conclusion*

The record shows that the district court considered the relevant factors, applied the factors in making its decision, and ordered an amount of maintenance that it determined was fair, just, and equitable under the circumstances. A reasonable person could agree with the district court. We thus find no abuse of discretion and affirm.

Affirmed.