(307 P.3d 221)
No. 107,046

In the Matter of the ESTATE OF THOMAS EDWIN MCLEISH,
Deceased.

Opinion filed
August 16, 2013.

*Robert E. Keeshan* and *Matthew M. Coleman*, of Scott, Quinlan, Willard, Barnes & Keeshan, LLC, of Topeka, for appellant Michelle Lee Stephen, Executor.

*Melvin J. Sauer, Jr.* and *Donald F. Hoffman*, of Dreiling, Bieker & Hoffman LLP, of Hays, for appellees Lois M. McLeish, William McLeish, and Edwin I. McLeish.

Before BUSER, P.J., MCANANY and POWELL, JJ.

POWELL, J.: In this appeal, we are faced with the unenviable task of imposing a hard lesson—that a party is bound by the con-

tract he or she signs even if it creates (in the eyes of ·some) an unfair or harsh result. We are also called upon to answer what appears to be a question of first impression—whether, in a divorce proceeding, a prior oral separation agreement, put on the record, assented to by the parties under oath, and approved by the court controls over a subsequent written separation agreement, signed by the parties, approved by the court, and filed with the clerk. Because we hold that an unambiguous written separation agreement incorporated into a journal entry and decree of divorce controls over a prior oral separation agreement placed on the record, we must reverse the district court and remand for further proceedings.

## Factual and Procedural History

Thomas Edwin McLeish (Edwin) and Lois McLeish (Lois) were married in 1950 and had two sons: Edwin McLeish (Eddie) and William McLeish (Bill). On August 16, 2006, Lois filed for divorce from Edwin in Ness County, Kansas, case number 2006 DM 19. During the divorce proceedings, attorney John Bird represented Lois and attorney John Lindner represented Edwin. On the eve of their divorce trial, the parties and their respective attorneys participated in several telephone conversations in efforts to resolve their divorce. During the telephone negotiations, Edwin and son Eddie were at John Lindner's office; Lois and son Bill were at John Bird's office. After several telephone conversations, the parties believed they reached an agreement. On May 20, 2008, Lindner announced the parties' agreement to the district court on the record, stating, "[W]e have agreed that the house on Section 19, the home place plus 40 acres, . . . [w]ill go to Ed in fee simple subject to a right of first refusal to Lois. . . . All other land Ed and Lois will hold in a life estate with their children as remaindermen."

After inquiry by the court, Lindner and Bird confirmed that the . remainder and retention of the life estate would include full rights to all mineral income. Lois testified that the couple started with nothing and acquired a significant amount of property during their marriage through inheritance, gift, and purchase. Lois also testified that her primary goal during settlement negotiations was to pass

her estate to her sons. Lindner stated the right to continue farming was priceless to Edwin and made up for everything he was giving up. At the conclusion of the hearing, the court found that there had been full and open disclosure between the parties as to all assets and liabilities of the marriage; that they had full knowledge of these assets and liabilities; that each of them was capable of arriving at this agreement; that they had made an independent decision and in doing so arrived at a property settlement agreement which was fair, just, and equitable to each of them.

On May 22, 2008, Bird sent Lindner a proposed journal entry attempting to memorialize the parties' property settlement agreement. The journal entry identified specific tracts of land, "including minerals, will be held by the parties as tenants in common as owners of a joint life estate" with the remainder to go to Eddie and Bill, or their issue, per stirpes.

On July 15, 2008, Lindner responded to Bird's proposed journal entry, stating:

"[O]ur understanding of the agreement on the minerals is that the parties would each own half of the minerals unconditionally in fee simple. I thought that was clear from the fact that they were delt [*sic*] with separately in negotiations and the agreement as read into the record provided that the oil and gas would be divided evenly between the parties and each would be responsible for their own share of all taxes thereon."

Lindner suggested the language concerning the minerals should read: "Each will own 50% of the minerals to be divided by mineral deed and on the producing minerals, followed by a division order." On August 21, 2008, Lindner sent Bird a letter enclosing a draft journal entry that Lindner signed and indicated that Edwin had a copy and approved it.

On September 9, 2008, Bird sent Lindner a letter enclosing the executed journal entry which Bird and Lois signed, indicating: "Now that we have the parties' agreement reduced to writing, could you please provide me with an accounting for the oil proceeds that your client has received since May 20, 2008?" Additionally, on September 9, 2008, Bird sent Judge Bruce T. Gatterman a letter enclosing the executed journal entry, advising: "The final

Journal Entry in this matter is just awaiting the Respondent's signature and it should be coming to you shortly."

On September 16, 2008, the district court executed the journal entry, which was "Approved by:" John T. Bird, Lois M. McLeish, John M. Lindner, and Thomas Edwin McLeish. The journal entry stated:

"[T]he parties announce to the Court that they have reached a full and complete agreement resolving all issues in this case which they announce to the Court and which the Court finds to be valid, just and equitable and approves the same to be incorporated into this divorce decree as follows:

"Mineral Interests:

. . . .

"Petitioner shall hereafter be the sole and separate owner of 50% of the mineral interests and Respondent shall hereafter be the sole and separate owner of 50% of the mineral interests. These interests shall be divided by mineral deed and by division order as well as any other document reasonably necessary to divide the interests of the parties effective May 20, 2008."

On January 26, 2009, Edwin executed an attested Last Will and Testament. The Will specifically disinherited his sons, Eddie and Bill, left his entire estate to Michelle Lee Stephen (Michelle), and appointed Michelle as Executor of his Estate. Edwin died on December 2, 2009.

On January 13, 2010, Michelle filed a Petition for Probate of Will and Issuance of Letters Testamentary. Eddie subsequently filed a Petition for Appointment of Special Administrator on February 9, 2010, contesting the validity of Edwin's Will and alleging incapacity and undue influence of Michelle. Lois, Bill, and Eddie all filed Petitions for Allowance and Classification of Demand, claiming they had valid demands against the Estate pursuant to the property settlement agreement reached in 2006 DM 19. Other motions were also filed which are not relevant to the discussion here.

On July 27, 2010, the district court held a hearing on the written defenses to the Petition for Probate of Will and Issuance of Letters Testamentary. The court found Edwin had the capacity to execute his Will and that he was not unduly influenced by Michelle and admitted Edwin's Will to probate. On October 19, 2010, the court issued Letters Testamentary to Michelle.

On April 22, 2011, the court held a hearing on Lois', Bill's, and Eddie's Petitions and admitted, over Michelle's objection, Bird's deposition, the transcript from the divorce hearing, and Lindner's notes from the oral pronouncement of the parties' settlement agreement. Further, the court heard argument from counsel and testimony from Eddie, Lois, and Lindner. The district court determined that the parties' oral proffer was their settlement agreement.

On September 14, 2011, the district court issued a memorandum decision and order concerning the pending claims of Eddie, Lois, Bill, and Michelle. The court concluded the oral property settlement agreement reached in Lois and Edwin's divorce case was ambiguous as a matter of law. The court determined Lois and Edwin's oral property settlement agreement created a joint life estate, as tenants in common, and included their interests in the oil, gas, and other minerals owned by them in their life estate, with the remainder equally to Eddie and Bill. The court directed Lois' counsel to prepare a journal entry incorporating the decision and setting forth the oral agreement of the parties reflecting ownership of the mineral interest.

On October 18, 2011, the district court entered the parties' journal entry allowing Lois', Bill's, and Eddie's (the Appellees) Petitions for Allowance and Classification of Demand and Lois and Bill's Petition to Terminate Life Estate and Joint Tenancy based on the oral property settlement reached in Lois and Edwin's divorce case.

On November 7, 2011, Executor Michelle appealed.

On January 6, 2012, Michelle filed a Petition to Stay, which the court granted without a supersedeas bond. The oil and gas proceeds received since Edwin's death continue to be held by the National Cooperative Refining Association (NCRA).

## DID THE DISTRICT COURT ERR IN FINDING THE ORAL PROPERTY SETTLEMENT CONTROLLED DISTRIBUTION OF MINERAL INTERESTS?

Michelle argues that the written separation agreement (which provided for a 50/50 split of the mineral rights) agreed to by the

parties, incorporated into the divorce decree, approved by the district court, and filed with the clerk controls. Conversely, Lois, Bill, and Eddie argue that the prior oral separation agreement (which provides for a joint tenancy life estate with both sons as remaindermen over the mineral rights) announced on the record and to which both Lois and Edwin agreed under oath controls. Both sides assert that the separation agreement they rely upon is unambiguous, unlike the district court, which examined the oral separation agreement and found it to be ambiguous.

For the reasons more fully set forth below, we hold: (1) the oral separation agreement merged into the journal entry and decree of divorce by operation of statute; (2) the oral separation agreement merged into the journal entry and decree of divorce by application of contract principles; and (3) Lois is bound by her signature on the written journal entry and decree of divorce.

## A. Oral Separation Agreement Merged into Journal Entry and Decree of Divorce by Operation of Statute

Michelle contends that the oral separation agreement merged into the written journal entry and decree of divorce pursuant to K.S.A. 60-1610(b)(3). (Note: All statutory references to the divorce code will be to the then applicable statutes, as the divorce statutes are now codified in Chapter 23.) We agree.

### Standard of Review

The "[i]nterpretation of a statute is a question of law over which an appellate court has unlimited review." *In re Marriage of Hall*, 43 Kan. App. 2d 392, 393, 225 P.3d 764 (2010). The intent of the legislature governs if that intent can be ascertained. *Bergstrom v. Spears Manufacturing Co.*, 289 Kan. 605, 607, 214 P.3d 676 (2009). An appellate court must attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *Padron v. Lopez*, 289 Kan. 1089, 1097, 220 P.3d 345 (2009).

### Analysis

K.S.A. 60-1610(b)(3) has codified the doctrine of merger of a separation agreement into the final decree as follows:

"*Separation agreement.* If the parties have entered into a separation agreement which the court finds to be valid, just and equitable, the agreement shall be incorporated in the decree. . . . The provisions of the agreement on all matters settled by it shall be confirmed in the decree . . . . Matters settled by an agreement incorporated in the decree, . . . shall not be subject to subsequent modification by the court except: (A) As prescribed by the agreement or (B) as subsequently consented to by the parties."

This statute had the effect of regulating separation agreements and eliminating the question of when such agreements merged with the divorce decree. *Fiske v. Fiske,* 218 Kan. 132, 134, 542 P.2d 284 (1975); see also *Lewis v. Lewis,* 4 Kan. App. 2d 165, 166, 603 P.2d 650 (1979) (property settlement agreement approved by the trial court merged into divorce decree). The benefit of this rule is that it made separation agreements—unlike other contracts— self-enforceable as part of the divorce judgment as opposed to requiring a separate judgment. *Fiske,* 218 Kan. at 135.

This doctrine was later reinforced by the Kansas Supreme Court in the case of *In re Marriage of Wilson,* 245 Kan. 178, 180, 777 P.2d 773 (1989),which held that until a divorce decree was put into writing and filed, it was of no effect. In *Wilson,* on the day the parties were set for trial, they reached a verbal agreement on issues relating to child support, visitation, property division, and maintenance. The court orally granted the parties a divorce and accepted the parties' stipulation as to their agreement. One of the parties was directed to prepare the journal entry. However, the husband died hours before the decree was filed. Relying on K.S.A. 60-258, which provided that no judgment is effective until a journal entry is signed and filed, our Supreme Court held that the parties were still lawfully married at the time of the husband's death. 245 Kan. at 180; see also *Valadez v. Emmis Communications,* 290 Kan. 472, 482, 229 P.3d 389 (2010) (jury verdict awarding defamation damages abated at time of plaintiff's death because journal entry not yet approved and filed); *In re Marriage of Harvey,* No. 100,524, 2009 WL 929721, at *1 (Kan. App. 2009) (unpublished opinion) (maintenance orders not effective until contained in journal entry, approved by court, and filed), *rev. denied* 289 Kan. 1278 (2010); *In re Marriage of Fulton,* No. 94,482, 2006 WL 3589798, at *9

(Kan. App. 2006) (unpublished opinion) (district court's oral pronouncement at divorce trial granting interest on lien vitiated by journal entry which stated lien to be without interest).

Also significant, however, was the court's treatment of the husband's estate's argument that the marital status of the parties and the division of property were divisible aspects of the divorce action, making the property settlement agreement portion of the decree still valid. The Supreme Court adopted the Court of Appeals' rationale that such a position was " 'untenable.' " *Wilson*, 245 Kan. at 181. Stated the court:

> " 'Although separation agreements are authorized by statute, K.S.A. 1988 Supp. 60-1610(b)(3), division of property and apportionment of debt are not necessary where the parties are not divorced. K.S.A. 60-258 renders the divorce decree ineffective in this case; therefore, the agreement incorporated therein must also be ineffective. If there is no divorce, there is no division of marital property.' [Citation omitted.]" 245 Kan. at 181 (quoting *In re Marriage of Wilson*, 13 Kan. App. 2d 291, 294, 768 P.2d 835 [1989]).

See also *Nicholas v. Nicholas*, 277 Kan. 171, 179, 83 P.3d 214 (2004) (where there is no divorce, there is no division of property); *Wear v. Mizell*, 263 Kan. 175, 180, 946 P.2d 1363 (1997) (same). But see *In re Estate of Loughmiller*, 229 Kan. 584, 592, 629 P.2d 156 (1981) (written postnuptial agreement executed in anticipation of divorce still valid even with death of spouse prior to completion of divorce); *King v. Mollohan*, 61 Kan. 683, 691, 60 Pac. 731 (1900) (same).

Lois, Bill, and Eddie argue, however, relying on *In re Marriage of Takusagawa*, 38 Kan. App. 2d 401, 166 P.3d 440, *rev. denied* 285 Kan. 1174 (2007), that Edwin and Lois entered into an unambiguous and binding oral agreement which was placed on the record and approved by the trial court. It is true that Kansas law allows for oral separation agreements. 38 Kan. App. 2d at 405. We believe *Takusagawa* to be inapplicable here.

First, unlike in the present case, there was no written agreement in *Takusagawa* that had been approved by the trial court and filed with the clerk. Second, the district court had already approved and filed a bifurcated divorce decree granting the parties a divorce and setting the matters relating to the division of property for trial.

Third, the wife refused to sign the proposed journal entry memorializing the parties' separation agreement, claiming her assent to the agreement had been made under duress or coercion; that its terms were unfair, unjust, and inequitable; and that it violated the statute of frauds as to those portions transferring land title. Fourth, she never denied the contents of the agreement. 38 Kan. App. 2d at 401-02, 407.

In light of the clear language of K.S.A. 60-1610(b)(3) and the authorities cited above, we hold that the written separation agreement, memorialized in the journal entry and decree of divorce, approved by the district court, and filed with the clerk constitutes the controlling agreement governing the disposition of the mineral rights at issue here. The district court erred in not so finding. To hold otherwise would be contrary to K.S.A. 60-1610 and K.S.A. 60-258 and would undermine the value of the certainty and finality of judgments entered by our courts. It is critical that journal entries accurately reflect the orders of our courts. Parties to litigation and, perhaps even more importantly, third parties who may be called upon to act in conformity with such court orders must have confidence in the written orders that are issued and presented to them. They should not be required to delve into the record in order to devine what an order really means. A lack of confidence would create endless and expensive litigation, such as in the present case, which would not serve the parties or the public interest. If a party questions the accuracy of a proposed journal entry, he or she always has the right to object and ask the court to correct any inaccuracies contained therein. Supreme Court Rule 170 (2012 Kan. Ct. R. Annot. 267). Additionally, should a party mistakenly approve a journal entry, that party always has the right after the fact to seek relief, provided it is done in a timely manner. K.S.A. 60-260(b)(1).

B. *Oral Separation Agreement Merged into Journal Entry and Decree of Divorce by Application of Contract Principles*

Even if we accepted *Takusagawa* as applicable to this case and found that a valid oral separation agreement existed between the parties at the time it was made, the application of contract principles supports the same conclusion we have already reached.

*Standard of Review*

" 'The interpretation and legal effect of written instruments are matters of law, and an appellate court exercises unlimited review. Regardless of the construction given a written contract by the trial court, an appellate court may construe a written contract and determine its legal effect.' " *In re Marriage of Gurganus*, 34 Kan. App. 2d 713, 717, 124 P.3d 92 (2005) (quoting *Unrau v. Kidron Bethel Retirement Services, Inc.*, 271 Kan. 743, 763, 27 P.3d 1 [2001]).

*Analysis*

It is a long-held rule of law in our state that "[a] property settlement agreement incorporated into a divorce decree is 'a hybrid in the law having the characteristics of a judgment and retaining the contractual rights of the parties.' " *In re Marriage of Wessling*, 12 Kan. App. 2d 428, 430, 747 P.2d 187 (1987) (quoting *In re Estate of Sweeney*, 210 Kan. 216, 224, 500 P.2d 56 [1972]). "The fact that a separation agreement is incorporated into a divorce decree does not extinguish those contractual aspects." *In re Marriage of Hudson*, 39 Kan. App. 2d 417, 426, 182 P.3d 25, *rev. denied* 286 Kan. 1178 (2008). Like any other contract, the intent of the parties to a separation agreement governs. *Hudson*, 39 Kan. App. 2d at 427; *Wessling*, 12 Kan. App. 2d at 430.

"The intent of the parties to a separation agreement must be determined from the agreement alone if the terms are unambiguous." *Wessling*, 12 Kan. App. 2d at 430; see also *Drummond v. Drummond*, 209 Kan. 86, 91, 495 P.2d 994 (1972) ("The true intent of the parties must be determined from the contract itself."). "The language in a contract is ambiguous when the words used to express the meaning and intention of the parties are insufficient, in the sense that the contract may be understood to reach two or more possible meanings." *Gurganus*, 34 Kan. App. 2d at 717. Moreover, "[n]o doctrine is better established or more frequently applied than the one that where parties have carried on negotiations, and have subsequently entered into an agreement in writing with respect to the subject matter covered by such negotiations, the written agreement constitutes the contract between them and determines their

rights." *Arensman v. Kitch*, 160 Kan. 783, 789, 165 P.2d 441 (1946); see also *In re Estate of Goff*, 191 Kan. 17, 32, 379 P.2d 225 (1963) (Schroeder, J., dissenting) (oral negotiations which lead to execution of written contract are merged into written instrument); *Villines v. General Motors Corp.*, 324 F.3d 948, 952 (8th Cir. 2003) (citing to Kansas law). "Thus, '[w]hen a contract is complete, unambiguous, and free from uncertainty, parol evidence of prior or contemporaneous agreements or understandings tending to vary the terms of the contract evidenced by the writing is inadmissible.' " *Villines*, 324 F.3d at 952 (quoting *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, 679-80, 829 P.2d 884 [1992]); see also *Prophet v. Builders, Inc.*, 204 Kan. 268, 272, 462 P.2d 122 (1969) (general rule is that subsequent written agreement embodies all prior understandings and agreements).

On May 20, 2008, the parties through their attorneys announced their property settlement agreement on the record. Following the hearing, on May 22, 2008, Bird sent a proposed journal entry to attorney Lindner covering the " 'meat' " of the parties' agreement. Bird's cover letter stated: "Would you please review the language that I have so far regarding the real estate and let me know if you see any problems with it or have any changes to suggest?"

On July 15, 2008, Lindner responded to Bird's letter:

"I have reviewed your partial initial draft of the Journal Entry of Divorce and I have the following comments and requests:

"On the first page and the second page, you have attempted to set forth the basic agreement between the parties as to how their land will be held. It is generally accurate as to the surface but our understanding of the agreement on the minerals is that the parties would each own half of the minerals unconditionally in fee simple. I thought that was clear from the fact that they were delt [*sic*] with separately in negotiations and the agreement as read into the record provided that oil and gas would be divided evenly between the parties and each would be responsible for their own share of all taxes thereon. . . . It is our understanding that the minerals would be divided evenly between the parties by mineral deed and then by appropriate division order on the producing minerals."

On August 21, 2008, Lindner sent Bird a letter enclosing a draft journal entry that Lindner signed and indicating that Edwin also had a copy and approved it. On September 9, 2008, Bird sent a letter to Lindner enclosing an executed copy of Lindner's August

21, 2008, journal entry, which Bird and Lois signed. Bird indicated: "Now that we have the parties' agreement reduced to writing, could you please provide me with an accounting for the oil proceeds that your client has received since May 20, 2008?" Additionally, on September 9, 2008, Bird sent Judge Gatterman a letter enclosing the executed journal entry, stating: "The final Journal Entry in this matter is just awaiting the Respondent's signature and it should be coming to you shortly."

On September 16, 2008, the district court executed the journal entry, which was "Approved by:" John Bird, Lois McLeish, John Lindner, and Thomas Edwin McLeish. The journal entry stated:

"[T]he parties announce to the Court that they have reached a full and complete agreement resolving all issues in this case which they announce to the Court and which the Court finds to be valid, just and equitable and approves the same to be incorporated into this divorce decree as follows:

"Mineral Interests:

. . . .

"Petitioner shall hereafter be the sole and separate owner of 50% of the mineral interests and Respondent shall hereafter be the sole and separate owner of 50% of the mineral interests. These interests shall be divided by mineral deed and by division order as well as any other document reasonably necessary to divide the interests of the parties effective May 20, 2008."

The district court found, and on appeal Lois, Bill, and Eddie allege, that the oral property settlement agreement entered on the record controls the distribution of Lois and Edwin's mineral interests. We disagree. The subsequent writing, which by review we find to be clear and unambiguous, merges all prior negotiations, understandings, and agreements into it. The written journal entry agreed to by the parties, approved by the court, and filed with the clerk controls. As it is also unambiguous as to its terms concerning the mineral interests at issue here, it was error for the trial court to admit parol evidence of possible contrary meanings.

## C. *Lois Bound by Her Signature*

Finally, Lois also contends that she

"did not make a free, calculated and deliberate choice to amend any terms of the settlement agreement as announced and approved by the trial judge on May 20, 2008, and as memorialized in the transcript which is now part of the record on

appeal. [Citation omitted.] Had the trial judge conducted a subsequent hearing on the matter, and approved amended separation agreement terms regarding the mineral interests of Edwin and Lois in particular, only then would Lois have had the opportunity to make a free, calculated and deliberate choice . . . . Instead, Appellees are faced with Edwin's attorney's own post-hearing idea of what the parties had agreed to on May 20, 2008, regarding mineral interests . . . ."

Lois' argument is without merit. "[A] party who signs a written contract is bound by its provisions regardless of the failure to read or understand the terms, unless the contract was entered into through fraud, undue influence, or mutual mistake." *Albers v. Nelson*, 248 Kan. 575, 579, 809 P.2d 1194 (1991). Lois was represented by counsel and signed the journal entry. The written journal entry controls.

### ARE APPELLEES ENTITLED TO RELIEF FROM THE JOURNAL ENTRY?

On appeal, Lois, Bill, and Eddie alternatively argue that if this court determines the oral property settlement agreement did not constitute the separation agreement of the parties, relief from the journal entry is appropriate under K.S.A. 60-260(b)(4) and/or K.S.A. 60-260(b)(6). Michelle argues that modification of the journal entry is barred by K.S.A. 60-260(b). We agree with Michelle.

*Standard of Review*

"A ruling on a motion for relief from judgment filed pursuant to K.S.A. 60-260(b) rests within the sound discretion of the trial court. The trial court's ruling will not be reversed in the absence of a showing of abuse of discretion. [Citations omitted.]" *In re Marriage of Leedy*, 279 Kan. 311, 314, 109 P.3d 1130 (2005).

*Analysis*

K.S.A. 60-260(b) provides six grounds for relief from a final judgment: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial; (3) fraud, misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; an earlier judgment has been reversed or vacated; or

applying it prospectively is no longer equitable; (6) any other reason that justified relief. If a party seeks relief under grounds (1), (2), or (3), the party must file a motion within 1 year after the court entered judgment.

a. *Appellees Did Not Request Relief Pursuant to K.S.A. 60-260(b)(4)*

Issues not raised before the trial court cannot be raised on appeal. *In re Care & Treatment of Miller*, 289 Kan. 218, 224-25, 210 P.3d 625 (2009). In Lois and Bill's brief to the trial court, they urged the district court to grant relief under K.S.A. 60-260(a) or 60-260(b)(6). Their brief then stated: "Lois and Bill do not claim relief under any of the other provisions of K.S.A. 60-260(b)."

Accordingly, Lois, Bill, and Eddie's claim for relief under K.S.A. 60-260(b)(4) is not properly before this court as it was not raised before the district court.

b. *Relief Is Not Appropriate Under K.S.A. 60-260(b)(6)*

Under K.S.A. 60-260(b)(6), a district court may relieve a party from a final judgment for "any other reason justifying relief." Motions filed under K.S.A. 60-260(b)(6) are not subject to the 1-year statute of limitations but must be filed within a reasonable time. The district court found K.S.A. 60-260(b)(6) not applicable because of the nature of the construction of the agreement.

Lois, Bill, and Eddie argue that the journal entry fails to give effect to the mutual intention of Lois and Edwin. They rely on *Neagle v. Brooks*, 203 Kan. 323, 328, 454 P.2d 544 (1969), in which the court found the broad language of K.S.A. 60-260(b)(6) authorizes the court " 'to vacate judgments whenever such action is appropriate to accomplish justice. Of course, this power is not provided in order to relieve a party from free, calculated and deliberate choices he has made. The party remains under a duty to take legal steps to protect his interests.' "

Michelle argues that the Appellees' real basis for granting relief falls under K.S.A. 60-260(b)(1)—mistake, inadvertence, surprise, or excusable neglect—or (b)(3)—fraud, misrepresentation, or mis-

conduct by an opposing party—both of which are time barred by the 1-year statute of limitations. Michelle is correct.

Relief cannot be granted under K.S.A. 60-260(b)(6) if the real reason for granting relief falls under one listed in (b)(1) to (3) and more than a year has gone by since the entry of the judgment. *In re Marriage of Reinhardt*, 38 Kan. App. 2d 60, 62, 161 P.3d 235 (2007). Lois, Bill, and Eddie cannot invoke subsection (b)(6) to circumvent the 1-year statute of limitations. Lois was represented by counsel and made a free and calculated decision when she signed the journal entry. Accordingly, Lois has not established that she is entitled to relief under K.S.A. 60-260(b)(6).

c. *Unreasonable Delay*

Even if we were to decide that K.S.A. 60-260(b)(6) applies, Lois' request for relief was not filed within a reasonable time. To determine whether the movant's request for relief was filed in a reasonable time, the court measures the time from when the movant came into possession of facts justifying the relief to the time he filed his motion seeking relief. Also relevant to determine reasonableness is whether the movant provides good reason for failing to file his motion earlier and whether such delay has prejudiced any of the other parties. *Wilson v. Wilson*, 16 Kan. App. 2d 651, 660-61, 827 P.2d 788, *rev. denied* 250 Kan. 808 (1992).

Lois, Bill, and Eddie argue that Michelle is not prejudiced by their request for relief from the written journal entry because a mineral deed was never prepared to transfer Lois and Edwin's mineral interests and the oil proceeds are currently being held in suspense. However, as Michelle points out, Lois, Bill, and Eddie have not presented evidence to indicate a valid reason for delay.

The court approved the parties' journal entry on September 16, 2008; Edwin died on December 2, 2009; and Lois, Bill, and Eddie filed their claims against the estate seeking to enforce the oral property settlement agreement on May 20, 2010, approximately 20 months after the journal entry was entered. As noted above, Lois signed the journal entry, which divided their mineral interests 50/50 in fee simple. If she disagreed with the journal entry, she should not have signed it. Nevertheless, after the court entered the parties'

journal entry, she possessed facts which allowed her to seek relief under K.S.A. 60-260(b)(1) or (3). Perhaps most significantly, Lois had the benefit of competent legal counsel during this entire time. Lois, Bill, and Eddie have not alleged any facts that would demonstrate a good reason for failing to file their motions for relief within a reasonable time after the court entered the journal entry. Therefore, Lois, Bill, and Eddie are not entitled to relief under K.S.A. 60-260(b)(6).

In light of our holding that the written journal entry and decree of divorce—agreed to by the parties, approved by the district court, and filed with the clerk—controls the resolution of this case, which granted Lois and her late ex-husband, Edwin, a 50/50 share of the mineral interests of their property, the remaining issues on appeal are moot. The judgment of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.