NOT DESIGNATED FOR PUBLICATION

No. 119,026

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Estate of
JACK W. FROST.


MEMORANDUM OPINION


Appeal from Johnson District Court; MICHAEL P. JOYCE, judge. Opinion filed March 1, 2019. Affirmed.


*Jane Frost*, appellant pro se.


*Timothy J. Sear* and *Kelly D. Stohs*, of Polsinelli PC, of Overland Park, for appellees John L. Frost and Country Club Trust Co., NA.


Before MALONE, P.J., HILL, J., and WALKER, S.J.


PER CURIAM:  Jack W. Frost passed away in 2002. After his will entered probate, his wife, Jane L. Frost, made a series of claims against the estate. Jane eventually settled her claims against the estate, and the estate was closed in 2005. Almost 12 years later, Jane filed a petition asking the district court to reopen Jack's estate because of fraud. The district court denied her petition, finding that she did not present grounds to reopen the estate under K.S.A. 59-1501a. Jane appeals, arguing that the district court erred in failing to interpret her petition as a motion for relief from judgment under K.S.A. 2018 Supp. 60-260(b). But Jane's petition to reopen the estate was untimely no matter how it should have been interpreted. As a result, we affirm the district court's judgment.

1

Jack and Jane Frost married in 1977. The couple both had children from previous marriages but had no children together. In 1984, they purchased a home in California as joint tenants. Five years later, they sold their California home, receiving a $1.6 million net profit. Jack deposited the profit in his personal trust account. He then gave Jane $500,000 from the sale and invested the rest in various assets, including putting an addition on their Kansas home.

In 1999, Jack redrafted his will. He left all his tangible personal property, other than a stamp collection, to Jane. He also directed that all other property be added to his trust and administered and distributed according to the trust agreement. He designated his son, John Frost, and Country Club Bank as co-executors of his estate and as co-trustees.

Jack eventually was diagnosed with lung cancer and emphysema. On December 9, 2002, while in the hospital, Jack signed a codicil to his will drafted by Elizabeth Ferrari of Lathrop & Gage. The codicil provided that if Jane predeceased him or did not survive him for at least six months, his tangible personal property would go to Jane's children, rather than to his children. The next day, Jack passed away.

In June 2003, the district court admitted Jack's will to probate and named John and Country Club Bank as co-executors. Jane filed a petition for her elective share as the surviving spouse, claiming she had: (1) a right to an elective share of Jack's augmented estate; (2) a right to statutory allowance; (3) a right to one-half of any real estate conveyed during the marriage without her consent; and (4) a right to the homestead.

In October 2003, Jane filed several more petitions making claims against the estate. Jane claimed that she and Jack had acquired community property while in California, and her rights to that property superseded any claims by the estate or by Jack's

trust. She claimed that the couple's California home was community property, and she was entitled to $118,980 from its sale that she never received. She also alleged that she had loaned $335,000 to Jack, which he had never repaid.

John and Country Club Bank denied Jane's claims and sent her interrogatories and requests for production of documents related to her claims. In her interrogatory responses, Jane argued that she could not list all the property she claimed was in Jack's augmented estate because she did not have all of Jack's files. She alleged the files were taken from her home by Ferrari and a representative of Country Club Bank. She also alleged John had erased files from Jack's computer.

In April 2004, Jane petitioned to remove John as co-executor and co-trustee. Jane claimed John was acting against the estate's interests and her interests for his own personal gain. She noted that John had denied her claims against the estate. She again alleged that John had deleted emails and files from Jack's computer that contained Jack's personal investment information after Jack's death. But the district court never held a hearing or ruled on Jane's petition because the parties agreed to settle.

On May 24, 2005, the parties entered a settlement agreement and mutual release of claims. Jane received the couple's Kansas home and $400,000. Jane, the Country Club Bank, John, and Jack's other children all agreed to release any present or future claims they might have against the estate or each other. The district court approved the agreement a week later. Jane later filed a notice of dismissal, requesting that her petitions be dismissed with prejudice. The estate was closed in September 2005.

On August 29, 2017, almost 12 years after Jack's estate was closed, Jane filed a pro se motion titled "Petition to Reopen the Estate Because of Fraud." She alleged that John and others had conspired to defraud her of the community property she rightfully owned. She again claimed John and others had come to her home soon after Jack's death

3

to remove documents and had withheld information that she needed to prove her property interest. Jane's petition to reopen the estate, including later amended petitions, failed to cite any statutory authority on which she based her requested relief.

The district court held a hearing on October 18, 2017. At the hearing, Jane testified that the couple's California home was community property. She also presented the home's deed which stated the home was held in joint tenancy. She presented Jack's checking account registers to show that Jack had originally deposited the profits from the California home into his own trust account, then deposited $500,000 into one of Jane's accounts and invested the rest in various assets. Jane believed that because Jack had commingled the profits from the California home with other assets in the estate, the rest of the estate had also become community property and she was entitled to at least half.

Jane told the court that she knew the California home had been community property during the original probate case, but she did not know the deed said it was held in joint tenancy. Jane testified that John had denied that she had a community property interest at that time. She also testified that John, along with others, took documents from her home and Jack's computer to prevent her from knowing the California home was held in joint tenancy. Jane testified that years after the estate closed, she found Jack's checkbook registers among items she had brought with her when she moved back to California. She asserted that the registers helped to prove her claims against the estate.

Jane admitted that she had made the same community property claims in 2003 that she was making in her petition to reopen the estate. She also admitted that some documents she claimed had been taken from her home were submitted along with her petitions in 2003. But she argued her current petition was distinguishable because she now had all the necessary documents to prove the California home was community property. Because she did not have the documents before, Jane claimed that she and her attorneys could not make an accurate judgment on whether to settle.

4

After hearing the evidence, the district court denied Jane's petition. The district court explained that a petition to reopen an estate was designed to distribute property not included in the inventory of the estate. The district court found that Jane had "entered into a Settlement Agreement with advice of Counsel that settled all the claims that [she was now making]." As a result, the district court concluded that Jane did not establish grounds to reopen the estate. The district court later filed an order stating that "[b]ased on the evidence presented, the Court finds no basis, pursuant to K.S.A. 59-1501a to reopen the estate." Jane timely appealed the district court's judgment.

ANALYSIS

The district court denied Jane's petition under K.S.A. 59-1501a, which provides that an estate may be reopened to: (1) distribute property of the decedent not included in the estate's inventory and discovered after the estate is closed; or (2) execute or deliver a deed to certain real property not executed or delivered before the estate closed. K.S.A. 59-1501a. On appeal, Jane does not argue that she showed grounds to reopen the estate under this statute. Instead, she argues that the district court erred in construing her motion as a petition to reopen the estate under K.S.A. 59-1501a. Jane acknowledges that she used the word "reopen" in the title of her petition. But she points out that she also alleged fraud. She argues that the district court should have interpreted her petition as a motion for relief from judgment under K.S.A. 2018 Supp. 60-260(b).

John and Country Club Bank agree that K.S.A. 59-1501a does not apply because Jane is not claiming she discovered property not included in the estate's inventory, nor is she claiming any failure to execute or deliver a deed to real property before the estate closed. They also agree that Jane's petition to reopen the estate appears to be seeking relief from the final judgment because of fraud. But they argue the district court did not err in denying her motion because it was untimely under K.S.A. 2018 Supp. 60-260(c).

5

Generally, courts should liberally construe pro se pleadings, giving effect to the pleading's content instead of the labels and forms used. *State v. Kelly*, 291 Kan. 563, 565, 244 P.3d 639 (2010). "Whether the district court correctly construed a pro se pleading is a question of law subject to unlimited review." 291 Kan. at 565. And we review a district court's ruling on a K.S.A. 2018 Supp. 60-260(b) motion for an abuse of discretion. *Bazine State Bank v. Pawnee Prod. Serv., Inc.,* 245 Kan. 490, 495, 781 P.2d 1077 (1989).

Under K.S.A. 59-2213, the district court in a probate proceeding retains jurisdiction for 30 days after the entry of judgment. After that, a judgment may be vacated or modified under K.S.A. 2018 Supp. 60-260(b). That statute gives district courts authority to grant relief from a final judgment for these reasons:

"(1) Mistake, inadvertence, surprise or excusable neglect;

"(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under subsection (b) of K.S.A. 60-259, and amendments thereto;

"(3) fraud, whether previously called intrinsic or extrinsic, misrepresentation or misconduct by an opposing party;

"(4) the judgment is void;

"(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

"(6) any other reason that justifies relief."

A motion under K.S.A. 2018 Supp. 60-260(b) must be made within a reasonable time, and a motion based on the reasons listed in K.S.A. 2018 Supp. 60-260(b)(1), (2), and (3) must be made within one year of the judgment. K.S.A. 2018 Supp. 60-260(c).

Assuming, without deciding, that the district court should have construed Jane's petition as a K.S.A. 2018 Supp. 60-260(b) motion, the district court did not err in denying it because it was untimely. In her motions at the district court level and in her briefs on

6

appeal, Jane makes clear she is asking for relief from the final judgment because of fraud. But a motion for relief based on fraud must be brought within one year of the final judgment. See K.S.A. 2018 Supp. 60-260(b)(3) and 60-260(c). Jane filed her motion almost 12 years after the estate was closed, well outside the time limit.

Jane tries to circumvent the time limitations by arguing that she is seeking relief under K.S.A. 2018 Supp. 60-260(b)(6), for "any other reason that justifies relief." She asserts that a motion under K.S.A. 2018 Supp. 60-260(b)(6) must be brought within a reasonable amount of time. Jane states she filed the motion two weeks after she received the documents from her attorney, and she contends this is a reasonable amount of time.

But this argument also fails. A district court may not grant relief under K.S.A. 2018 Supp. 60-260(b)(6) "if the real reason for granting relief falls under one listed in (b)(1) to (3) and more than a year has gone by since the entry of the judgment." *In re Estate of McLeish*, 49 Kan. App. 2d 246, 260, 307 P.3d 221 (2013); see also *In re Marriage of Leedy*, 279 Kan. 311, 323, 109 P.3d 1130 (2005). Jane has been clear that she is alleging fraud, so her real reason for asking for relief falls under K.S.A. 2018 Supp. 60-260(b)(3). She cannot circumvent the time limitations on a motion for relief from judgment because of fraud by now asking for relief under K.S.A. 2018 Supp. 60-260(b)(6).

Finally, we observe that Jane brought her claim outside the statute of limitations for fraud. As Jane notes, a fraud claim can be brought up to two years after the discovery of the fraud. K.S.A. 60-513(a)(3). But "in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action." K.S.A. 60-513(b). So even if this court were to accept Jane's claim that she did not discover the fraud until recently, the statute of limitations has already run because the alleged fraud happened more than 10 years before she brought her claim.

To sum up, even if the district court should have construed Jane's petition as a motion for relief from judgment under K.S.A. 2018 Supp. 60-260(b), the motion was untimely under K.S.A. 2018 Supp. 60-260(c). Moreover, Jane's fraud claims were barred by the statute of limitations under K.S.A. 60-513(a)(3). If a district court reaches the correct result, its decision will be upheld even though it relied on the wrong ground or assigned erroneous reasons for its decision. *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015). For these reasons, we conclude the district court did not err in denying Jane's petition to reopen the estate.

Affirmed.