NOT DESIGNATED FOR PUBLICATION

No. 120,522

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

SHANNON E. CREAGH, f/k/a/ SHANNON E. HOFF,
*Appellee*,

and

DAVID T. HOFF,
*Appellant*.


MEMORANDUM OPINION

Appeal from Riley District Court; JOHN F. BOSCH, judge. Opinion filed December 13, 2019. Affirmed.

*Melissa D. Richards*, of Weary Davis, L.C., of Manhattan, for appellant.

*Todd A. Luckman*, of Stumbo Hanson, L.L.P., of Topeka, for appellee.


Before MALONE, P.J., STANDRIDGE and WARNER, JJ.


PER CURIAM: This is a postdivorce proceeding involving the marriage of Shannon E. Creagh (f/k/a Shannon E. Hoff) and David T. Hoff. Shannon filed a motion to modify child support alleging David failed to: (1) automatically increase his child support payments after the expiration of certain offsets that were agreed to in the divorce settlement and (2) notify her of a more than 10% change in his financial circumstances. Following an evidentiary hearing, the district court granted Shannon's motion, ordered David to pay the back child support arrearage resulting from expiration of the setoffs, and increased David's child support obligation to coincide with his change in financial

1

circumstances. The district court also sanctioned David for his failure to notify Shannon of the change in his financial circumstances and ordered David to pay Shannon's attorney fees related to litigation of the motion to modify child support. For the reasons stated below, we affirm.

FACTS

Shannon and David's divorce became final on November 10, 2014. During the course of the divorce proceedings, the couple engaged in mediation and reached a settlement agreement. The mediated agreement later was adopted and approved by the district court in its judgment and decree of divorce. Under the terms of the agreement, David and Shannon were to have joint legal custody of their two minor children, with Shannon serving as the residential parent and David paying appropriate child support. David's child support obligation was calculated at a base rate of $1,851 per month, but the parties agreed to lower it to $1,276.83 per month. A footnote in the settlement agreement explained why:

> "The amount of $1,276.83 has been calculated with a base child support obligation of $1,851.00 per month. The parties have agreed that the payment for the surgery debt that [Shannon] has agreed to be responsible for shall be paid via reduction of child support in the amount of $233.17 per month until the debt is paid in full. In addition, the parties have agreed to divide the debt load of the parties (less the mortgage and the car payments) via the incomes of the parties; [i.e.,] 72% for [David] and 27% for [Shannon]. As such, [Shannon] is responsible for an additional 13% ($8200) of the marital debt over and above the debt divided between the parties. This amount shall be paid via a reduction in child support of $341 per month for the period of 24 months."

Significant here, the journal entry of judgment and decree of divorce stated that David must pay Shannon "the sum of $1,276.83 per month for child support" without going into the details of how they reached that amount.

The agreement stated that it must be reviewed "no later than October 1, 2016 or when the real estate sells, whichever is first." But October 1, 2016, came and went without any review. On December 26, 2017, David filed a motion to terminate spousal maintenance based on allegations that Shannon was cohabitating in a marital-type relationship with her long-time fiancé. On January 12, 2018, Shannon filed a pleading denying the allegation of cohabitation along with a motion asking the court to modify child support, to assess against David and order him to reimburse her for overpayment on debt, and to award attorney fees. Shannon later amended her motion to specifically claim that David failed to: (1) notify her of a material change in financial circumstances—namely his reassignment to a new post in Hawaii—beginning in December 2017 that resulted in an increase in continuation pay, cost of living allowance, and basic allowance for housing; (2) automatically increase his child support payments by $233.17 per month after the surgical debt was paid in full; and (3) automatically increase his child support payments by $341 per month after the expiration of the 24-month marital debt payoff period.

The district court held an evidentiary hearing on both motions but, due to time constraints, bifurcated the hearing to be held on two separate dates. The first hearing occurred on May 29, 2018, and addressed David's motion to terminate spousal maintenance based on cohabitation. But after hearing the evidence and the arguments of counsel, the district denied the motion. David appealed, but a panel of this court recently affirmed the district court's ruling. See *In re Marriage of Hoff*, No. 119,705, 2019 WL 3978561 (Kan. App. 2019) (unpublished opinion).

The hearing on Shannon's motion to modify child support was held on October 29, 2018. David testified and largely admitted the allegations contained in Shannon's motion. Based on the undisputed evidence and the arguments of counsel, the district court granted Shannon's motion. Specifically, the district court found that David failed to notify Shannon of a material change in his financial circumstances and also failed to

3

automatically increase his child support payments when the surgical and marital debt offsets expired. As a result, the district court ordered David to increase his child support obligation to $2,270 per month. That amount reflected the new child support rate based on David's increased income and without the offsets for the expired debts. The district court also ordered David to pay child support arrearages based on his failure to automatically increase his monthly payments when the surgical and marital debt setoffs expired. And finally, the district court imposed sanctions on David for his failure to notify Shannon of a material change in his financial circumstances and ordered David to pay Shannon's attorney fees related to her motion to modify child support.

ANALYSIS

On appeal, David claims the district court erred by ordering him to pay child support arrearages, by imposing sanctions, and by ordering him to pay Shannon's attorney fees related to the motion to modify support. We address each of David's claims in turn.

1. *Child support arrearages*

David argues the district court's order to pay arrearages due and owing under the parties' settlement agreement constituted a retroactive modification of child support in violation of K.S.A. 2018 Supp. 23-3005(b), which provides that a child support modification can only be retroactive to a date at least one month after the motion to modify is filed.

Statutory interpretation is a question of law over which appellate courts have unlimited review. *State v. Ward*, 307 Kan. 245, 251, 408 P.3d 954 (2018). We also exercise unlimited review over issues involving the interpretation of separation agreements, as they are subject to the normal rules of contract law. *In re Estate of*

4

*McLeish*, 49 Kan. App. 2d 246, 255, 307 P.3d 221 (2013). "'The fact that a separation agreement is incorporated into a divorce decree does not extinguish those contractual aspects.'" 49 Kan. App. 2d at 255.

"'The primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract without applying rules of construction.'" *Stechschulte v. Jennings*, 297 Kan. 2, 15, 298 P.3d 1083 (2013). Further, the intent of the parties and the meaning of the contract should also be determined from the plain, general, and common meaning of the terms used. *Wood River Pipeine Co. v. Willbros Energy Services Co.*, 241 Kan. 580, 586, 738 P.2d 866 (1987). And finally, when interpreting contractual provisions, appellate courts should not isolate one sentence or provision and instead should construe and consider "'the entire instrument from its four corners. The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided.'" *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 963, 298 P.3d 250 (2013).

The journal entry and decree of divorce ordered David to pay $1,276.83 per month in child support beginning on October 1, 2014. But the journal entry expressly adopted and incorporated the parties' settlement agreement, which stated that David's child support obligation would be set at a base rate of $1,851 per month but reduced by the two setoffs. The terms of the contract between Shannon and David, which were expressly incorporated into the journal entry of judgment and divorce decree, are clear and unambiguous. Giving the words their plain and common meaning, the parties agreed that David's child support obligation would be set at a base rate of $1,851 per month but reduced by two setoffs, one of $341 per month for Shannon's portion of the marital debt and another of $233.17 per month for Shannon's surgical debt. The marital debt setoff was to continue for a "period of 24 months" and the surgical debt setoff was to continue "until the debt [was] paid in full."

5

In the absence of an express provision in the contract compelling him to do so, however, David argues on appeal he was not automatically required to increase his child support payments when the setoffs expired. Instead, David asserts Shannon was required to file a motion to modify child support and obtain a court order granting the motion. Without a motion and court order, David argues the district court's current order requiring him to pay the difference in child support from when the setoffs expired to the date of the hearing constituted a retroactive modification of child support in violation of K.S.A. 2018 Supp. 23-3005(b).

But David's argument reads provisions into the settlement agreement that are not there. There is no provision in the settlement agreement requiring Shannon to file a motion or obtain a court order to get David to increase his child support obligation when the setoffs expired. In fact, the contract explains the reason for the temporary reduction in child support and expressly sets forth the amounts owed, which in turn clearly reflects the parties' intent regarding precisely when the setoffs would expire. The mediated settlement agreement provided that the support obligation was reduced either by liquidated debt amounts or that were set for a definite period that accorded with the amount due. Continuing the setoffs beyond the need to pay these debts is contrary to the intent of the parties as reflected in the contract. And doing so would permit David to receive additional funds at the expense of the rights of the minor children.

Our interpretation of the contract as set forth above is not at odds with the rule against retroactive child support judgments under K.S.A. 2018 Supp. 23-3005(b). The statute governs modification of support, not enforcement of an existing support amount. Therefore, its limit on retroactivity does not apply to the facts presented in this case. For the reasons stated above, we affirm the district court's decision requiring David to pay the back child support that he owed as a result of his failure to automatically increase his payments when the temporary debt setoffs expired.

6

2. *Sanctions*

After granting Shannon's motion to modify child support, the district court imposed $838 in sanctions against David based on his failure to notify Shannon of a material change in his financial circumstances. The court noted this amount reflected two months of the resulting increase in child support and that it chose this amount based on the fact that David's misconduct in failing to report a material change in his financial circumstances occurred when he took his new job in Hawaii, which was two months before Shannon filed her motion. David argues the district court abused its discretion by imposing this sanction.

A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court, (2) it is based on an error of law, or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015). But to the extent that this issue requires the interpretation and application of statutes or the Kansas Child Support Guidelines, it is a question of law subject to unlimited review. See *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015); *In re Marriage of Dean*, 56 Kan. App. 2d 770, 773, 437 P.3d 46 (2018).

Section V.B.2. (2019 Kan. S. Ct. R. 107) of the Kansas Child Support Guidelines provides as follows:

> "In the event of a failure to disclose a material change of circumstances, such as the understatement, overstatement, or concealment of financial information, as a result of such breach of duty, the court may determine the dollar value of a party's failure to disclose, and assess the amount in the form of a credit on the Line F.3 child support amount or an amount in addition to Line F.3 child support amount for a determinate amount of time. The court may also adopt other sanctions."

7

Under this provision, the decision to assess sanctions based on a failure to disclose a material change of circumstances is one that lies squarely within the discretion of the district court. *In re Marriage of Johnson*, 50 Kan. App. 2d 687, 694, 336 P.3d 330 (2014).

David argues the district court abused its discretion when it imposed $838 in sanctions, which represented the increase in child support payments for the two months from December 1, 2018, the date he experienced a material change in financial circumstances, to the date Shannon filed her motion to modify support. David claims that this sanction was unreasonable because even if he had notified Shannon of his increased pay on the same day as the change occurred, it would have taken at least two months for Shannon to retain counsel and file the appropriate motions to actually obtain the change in child support. But David did not notify Shannon of his increased pay on the same day as the change occurred. In fact, Shannon only learned of his increased cost of living allowance and basic allowance for housing in the course of defending David's motion to terminate spousal maintenance. And even then David was not forthcoming. It was only after Shannon filed a motion to modify child support and the parties engaged in discovery that David finally revealed how much money he was actually making. We find the district court did not abuse its discretion by ordering sanctions in the amount of two months of increased child support for David's failure to notify Shannon of a material change in his financial circumstances.

3. *Attorney fees*

a. *District court award*

K.S.A. 2018 Supp. 23-2715 permits costs and attorney fees to be awarded to either party in a divorce case "as justice and equity require." When the court has authority to grant attorney fees, its decision is reviewed for an abuse of discretion. *Estate of*

*Kirkpatrick v. City of Olathe*, 289 Kan. 554, 572, 215 P.3d 561 (2009); *In re Marriage of Strieby*, 45 Kan. App. 2d 953, 972, 255 P.3d 34 (2011). The district court has wide discretion to determine the amount and the recipient of attorney fees. If the award is supported by substantial competent evidence, this court will not reweigh the testimony or evidence presented or reassess the credibility of witnesses. 45 Kan. App. 2d at 973.

David claims that the award of $12,320 for attorney fees on the child support issue was unreasonable, and therefore an abuse of discretion, because many of the services billed for were not specific to the child support issue. But the evidence in the record does not support David's claim.

Shannon filed a motion for attorney fees with the district court in conjunction with her motion to modify child support. At the conclusion of the child support hearing, the court directed Shannon's counsel to provide to the court a detailed statement reflecting the work provided by the attorney on the child support issue and the number of hours for that work. On November 19, 2018, counsel provided the detailed statement. In the cover letter to the court, counsel noted that he included only those hours spent on the motion to modify child support and had redacted any time attributable to the motion to terminate maintenance. After reviewing the detailed fee statement, the court awarded $12,320 as requested.

The detailed fee statement is in the record, and we have reviewed the description of the attorney services billed and the number of hours spent working on each service. Each of these descriptions appear to be related to only the time spent working on the motion to modify child support. Because the award of attorney fees is supported by substantial competent evidence, we find no abuse of discretion by the district court.

b. *Attorney fees on appeal*

After oral argument in this case, Shannon filed a timely motion with this court requesting attorney fees for the costs she incurred in defending against David's appeal. Shannon's attorney submitted an affidavit detailing her fees at an hourly rate of $150, for a total of $3,187.50. Shannon requests attorney fees under Supreme Court Rule 7.07(b)(1) (2019 Kan. S. Ct. R. 50), which allows this court to award attorney fees for services on appeal in a case where the district court had the authority to award attorney fees. In a family law case, the district court may award attorney fees to either party "as justice and equity require." K.S.A. 2018 Supp. 23-2715. Since the district court had authority to grant attorney fees, this court has authority to award attorney fees for services on appeal.

According to the affidavit and billing statement that Shannon submitted with her motion, her lawyer billed $3,187.50 working on this appeal, at a rate of $150 per hour. When determining the appropriate amount to award to a party, we consider the eight factors listed in the Kansas Rules of Professional Responsibility, Rule 1.5(a) (2019 Kan. S. Ct. R. 300), for determining reasonable attorney fees:

"(1)  the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2)  the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3)  the fee customarily charged in the locality for similar legal services;

"(4)  the amount involved and the results obtained;

"(5)  the time limitations imposed by the client or by the circumstances;

"(6)  the nature and length of the professional relationship with the client;

"(7)  the experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8)  whether the fee is fixed or contingent."

We have reviewed the detailed billing statement for attorney services rendered to Shannon on appeal and find the fee requested to be reasonable under the factors set forth in Rule 1.5(a). Accordingly, we award attorney fees to Shannon in the amount requested, $3,187.50.

Affirmed.