NOT DESIGNATED FOR PUBLICATION

No. 127,817

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of
ROSALIND GIBSON, f/n/a ROSALIND FINCH,
*Appellee*,

and

JOSHUA FINCH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Johnson District Court; JAMES F. VANO, judge. Submitted without oral argument. Opinion filed November 7, 2025. Affirmed.

*Richard W. Martin, Jr.*, of Martin Law Group, LLC, of Leawood, for appellant.

*Catherine A. Zigtema*, of Zigtema Law Office LC, of Shawnee, for appellee.

Before WARNER, C.J., ARNOLD-BURGER and BRUNS, JJ.

PER CURIAM: Rosalind Gibson (Rosalind), formerly Rosalind Finch, and Joshua Finch (Joshua) divorced in October 2020. The district court later granted Rosalind's motion to enforce the judgment, finding she was entitled to half of Joshua's personal injury lawsuit settlement under their separation agreement. Joshua appeals the district court's ruling. Finding no error, we affirm the district court's decision. We also deny Rosalind's request for appellate attorney fees.

1

On October 20, 2020, after roughly four years of marriage, Rosalind filed a pro se petition for divorce from Joshua. Six days later, a workers compensation claim filed by Joshua against the Olathe School District was settled for $13,320; the net after attorney fees was $9,111.14. At a Zoom hearing in January 2021 to finalize the divorce, the parties presented an oral separation agreement to the district court accompanied by an Excel spreadsheet. Rosalind and Joshua agreed to retain their individually owned assets and liabilities and to split certain joint assets.

Joshua explained at the hearing that the spreadsheet included "settlements" they had agreed to split equally. Joshua stated that "I'm in the middle of a settlement *right now* that she will obtain half of. And then she's in the middle of a settlement as well that I will maintain half of." (Emphasis added). The spreadsheet contained two items labeled "Lawsuit Settlement" with a notation on one stating, "JD Finch receives 50% of total amount" and a notation on the other stating, "RM Finch receives 50% of total amount." Neither item referenced a case number or monetary amount. Later, Rosalind explained that another line on the spreadsheet referred to Joshua's "Salary Back Pay" and included the exact amount of the workers compensation settlement, $9,111.14, which the court noted was "scratched out." Rosalind explained: "That's correct. That's already been taken care of."

The district court closed the hearing by announcing it would grant the divorce and incorporate the parties' oral separation agreement into the divorce decree.

About two weeks later, the district court filed the final divorce decree without objection from either party. An addendum attached to the decree contained the following relevant paragraphs:

2

"The parties agree to split the following:

. . . .

"Settlement or judgment proceeds of two lawsuits involving each of these parties, respectively, will be split equally between them and they will be equally responsible for attorney fees arising as a result of those cases. Attorney fees were borrowed as indicated in the DRA and exhibit.

"The parties agreed upon disposition of Respondent's salary backpay . . . which they have executed prior to trial."

In November 2021, Joshua filed a separate personal injury lawsuit arising out of the same car accident that was the subject of the workers compensation claim. It was settled in November 2022 for $102,673.75.

In December 2023, Rosalind filed a pro se motion to enforce the terms of the decree, which alleged that Joshua had failed to pay her "50% of the lawsuit settlement from his auto accident in 2019. Case No. 21CV05290." The motion further alleged that Joshua received a total settlement of $102,673.75 on November 17, 2022, which Rosalind believed entitled her to a payment of "$51,336.88 plus any court costs filed and punitive damages for unlawfully going against the divorce decree in the amount of $6,000."

Joshua opposed the motion, contending that the "lawsuit settlement" referred to a workers compensation claim against his former employer, arising from a car accident that was pending around the time of the divorce petition. He provided a copy of the settlement entitled Joshua Finch v. Olathe School District USD #233. He was represented by the law firm of Edelman & Thompson, L.L.C. Joshua further asserted that he paid Rosalind $1,555.57 from the settlement of that workers compensation claim, which was her share of the total $9,111.14 after subtracting $3,000 she agreed to reimburse his parents for attorney fees. Joshua then filed a separate personal injury lawsuit arising out of the same

3

car accident in November 2021, months after the divorce was final. In short, Joshua asserted that the separation agreement did not anticipate this second lawsuit, so he should not have to pay Rosalind any portion of the settlement he received a year later.

The parties presented evidence and testimony in support of their positions at a hearing in February 2024, but no transcript of that hearing appears in the record. At a later hearing in March 2024, at which Rosalind appeared pro se and Joshua appeared with counsel, the district court began by reviewing a digital recording of the January 2021 divorce hearing on the record. After the parties presented their arguments, the court took the matter under advisement.

The following week, the district court entered a written memorandum decision and ruled in Rosalind's favor. The court said that Joshua's argument was "logical at first blush," but found "the [personal injury] claim was pending and contemplated by the parties and was the subject of their mutually agreed settlement as it was presented to the Court." The court also found that the parties' use of the term "'lawsuit'" was ambiguous because it "meant both actual litigation that was pending and the litigation that was a real potential based upon the claim that was contemplated." The court also concluded that the parties had labeled Joshua's workers compensation claim as "'Salary Back Pay'" on the spreadsheet, so it was not considered part of the two items labeled "'Lawsuit Settlement'" they had agreed to share equally.

In sum, because Joshua had not yet paid Rosalind any proceeds from the personal injury lawsuit—which "was something of value to these parties, mutually bargained for, in their approved settlement"—the court ordered Joshua to pay $51,336.88 for her half of the settlement.

Joshua timely appealed.

4

I.    JOSHUA HAS NOT ACQUIESCED IN THE JUDGMENT

Before getting to the substantive issues of Joshua's arguments on appeal, we must first consider whether we lack appellate jurisdiction because of acquiescence. As Rosalind notes, the Kansas Supreme Court has long held that "acquiescence in the judgment cuts off the right of appellate review." *Younger v. Mitchell*, 245 Kan. 204, 206, 777 P.2d 789 (1989). Whether a party loses their right to appeal through acquiescence raises a jurisdictional issue over which this court exercises unlimited review. *Alliance Mortgage Co. v. Pastine*, 281 Kan. 1266, 1271, 136 P.3d 457 (2006).

Rosalind correctly points out that Joshua did not seek an order staying execution of the judgment, did not post a supersedeas bond, and did not object to the garnishment proceedings she initiated after this court docketed his appeal. Joshua's response in his reply brief simply asserts that he "neither assumed any burdens nor accepted the benefits of the judgment contested on appeal" and that *Younger* recognized "'a party need not post a supersedeas bond or otherwise seek a stay of the judgment as a prerequisite for appealing an order entered in a garnishment proceeding.'"

As Rosalind notes, acquiescence occurs when a party *voluntarily* complies with all or part of a judgment. See *Varner v. Gulf Ins. Co.*, 254 Kan. 492, 494-98, 866 P.2d 1044 (1994) (holding that an insurer's partial payment of the judgment constituted acquiescence); see also *Uhlmann v. Richardson*, 48 Kan. App. 2d 1, 17, 287 P.3d 287 (2012) (a party's actions must "'clearly and unmistakably show an inconsistent course of conduct or an unconditional, voluntary and absolute acquiescence'"). A party to an appeal acquiesces in a judgment by either assuming burdens or accepting benefits of the judgment contested on appeal. *First Nat'l Bank in Wichita v. Fink*, 241 Kan. 321, 324, 736 P.2d 909 (1987).

As the Kansas Supreme Court has explained, Kansas courts are more likely to find acquiescence because unlike in other states, "it is so very easy in this state to procure a stay of execution, supersedeas, or the like." *Paulsen v. McCormack*, 133 Kan. 523, 527, 1 P.2d 259 (1931). Yet the court has also held that "the general rule pertaining to acquiescence in judgments should not be strictly applied in divorce cases because of the peculiar situations of the parties and the equitable considerations involved." *Gordon v. Gordon*, 218 Kan. 686, 691, 545 P.2d 328 (1976). This court summarized the general rule in *Gordon*, stating: "[W]hen the complaining party cannot show prejudice, the determinative factors of acquiescence in a domestic relations case revolve around the consistency with which the litigant is attacking the judgment or the severability of the provision of the judgment under which the benefits have been accepted or burdens assumed." *Martin v. Martin*, 5 Kan. App. 2d 670, 672, 623 P.2d 527 (1981). In other words, the question is whether Joshua's appeal of the district court's order is inconsistent with his conduct in failing to prevent enforcement of the judgment.

Contrary to Rosalind's argument, Kansas courts have held that merely failing to stay execution of a judgment by filing a supersedeas bond is not acquiescence. See *Security Bank of Kansas City v. Tripwire Operations Group*, 55 Kan. App. 2d 295, 300, 412 P.3d 1030 (2018) ("[F]ailure to post a bond alone is not acquiescence[.]") (citing *State v. Downey*, 198 Kan. 564, 568, 426 P.2d 55 [1967]; *Citifinancial Mortgage Co. v. Clark*, 39 Kan. App. 2d 149, 156-57, 177 P.3d 986 [2008] [similarly rejecting argument that party acquiesced by failing to stay execution of a judgment]). Likewise, this court held in *Uhlmann* that a party did not acquiesce by issuing garnishment orders to collect on a judgment, in part because the garnishment spurred the other party to act to prevent collection on the judgment. See *Uhlmann*, 48 Kan. App. 2d at 13, 17-18. The panel further determined that the judgment debtor would not have acquiesced even if funds had been garnished because any such action would have been involuntary. 48 Kan. App. 2d at 17-18 (citing *Younger*, 245 Kan. at 207-08).

This case presents a similar situation to *Uhlmann*. While Rosalind filed requests for garnishment orders after this court docketed Joshua's appeal, the most recent documents available in the record are "Notice[s] to Judgment Debtor" filed near the end of October 2024 by Rosalind's former attorney. These unsigned and unserved notices suggest that Rosalind has not successfully garnished any of Joshua's funds to satisfy the judgment. Moreover, Joshua would not lose his right to appeal even if Rosalind came forward with something to show even partial collection of the judgment by garnishment because that would only involve involuntary action on Joshua's part. Accordingly, we reject Rosalind's assertion that Joshua voluntarily acquiesced in the judgment and decline her invitation to dismiss the appeal for lack of jurisdiction.

II.     THE DISTRICT COURT DID NOT ERR IN GRANTING ROSALIND'S MOTION TO ENFORCE JUDGMENT

Joshua's appeal challenges the district court's ruling on Rosalind's motion to enforce judgment, primarily arguing that the court had no authority to modify the parties' separation agreement. He argues that the only basis to challenge the district court's ruling would be to file a motion for relief from judgment under K.S.A. 60-260.

A. *The district court had both inherent and statutory authority to enforce its own orders.*

To begin, Joshua is correct that K.S.A. 23-2712(b) prohibits a court from modifying the property division terms of a separation agreement "except:  (1) As prescribed by the agreement; or (2) as subsequently consented to by the parties." He is also correct that modification can nonetheless occur when a party seeks relief under K.S.A. 60-260. *In re Marriage of Johnston*, 54 Kan. App. 2d 516, Syl. ¶ 3, 402 P.3d 570 (2017). But as Rosalind argues, the district court did not *modify* the separation agreement, it *enforced* the separation agreement by concluding that the parties had mutually agreed to divide the proceeds of an unspecified lawsuit settlement at the time of divorce.

7

Despite Joshua's mistaken framing of the district court's ruling, Kansas district courts have both a statutory and inherent power to enforce their own orders. See *Koch Engineering Co. v. Faulconer*, 227 Kan. 813, Syl. ¶ 4, 610 P.2d 1094 (1980); see also *In re Marriage of Garren*, No. 91,957, 2004 WL 2282137, at *2 (Kan. App. 2004) (unpublished opinion) ("A settlement agreement incorporated into a divorce decree is a judgment of the court and as such the district court has an obligation to enforce the terms of the agreement. See *Dozier v. Dozier*, 252 Kan. 1035, 1039, 850 P.2d 789 [1993]."). Put simply, Joshua provides no contrary authority prohibiting the district court from enforcing the terms of the parties' separation agreement incorporated into its own divorce decree. So we will proceed to examine Joshua's underlying claim on appeal—whether the divorce decree, incorporating the settlement agreement, required he pay Rosalind for half of his personal injury lawsuit settlement.

B. *The settlement agreement was ambiguous.*

We begin with the proposition that personal injury settlements can properly be considered marital property subject to division in a divorce case. See *In re Marriage of Meek*, 64 Kan. App. 2d 270, Syl. ¶ 5, 551 P.3d 127 (2024), *aff'd* 320 Kan. 313, 567 P.3d 252 (2025). And, since marital separation agreements are contracts, issues requiring interpretation of the terms of the agreement are reviewed de novo on appeal. *In re Marriage of Knoll*, 52 Kan. App. 2d 930, 939, 381 P.3d 490 (2016).

Next we note that "'[a] property settlement agreement incorporated into a divorce decree is "a hybrid in the law having the characteristics of a judgment and retaining the contractual rights of the parties."'" *In re Estate of McLeish*, 49 Kan. App. 2d 246, 255, 307 P.3d 221 (2013) (quoting *In re Marriage of Wessling*, 12 Kan. App. 2d 428, 430, 747 P.2d 187 [1987]). Stated another way, the parties' "prior negotiations, understandings, and agreements" *merge* into the court's final journal entry and divorce decree, which controls going forward. 49 Kan. App. 2d at 257.

Unless the terms are ambiguous, the intent of the parties to a separation agreement must be determined from the agreement alone. See *In re Marriage of Nelson*, 58 Kan. App. 2d 920, 925, 475 P.3d 1284 (2020) ("When the language of a contract is unambiguous, the parties' intent must be ascertained from the four corners of the document—the contract itself—without applying additional rules of construction."). "To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." *Simon v. National Farmers Organization, Inc.*, 250 Kan. 676, 680, 829 P.2d 884 (1992). But where an ambiguity exists, courts can rely on parol evidence of prior or contemporaneous agreements or understandings to ascertain the parties' intent. See *In re Estate of McLeish*, 49 Kan. App. 2d at 256.

Because the divorce decree here incorporates the parties' separation agreement, it is a hybrid document that serves both as an enforceable court order and a contract between the parties. See *In re Estate of McLeish*, 49 Kan. App. 2d at 255. Our job is to determine what exactly the parties agreed to. So how do we do that?

- *First*, as already stated, we presume that the written contract fully memorializes the parties' agreement, and the parties generally cannot later argue that there was an oral side agreement that alters the terms of that contract. See *Hummel v. Wichita Federal Savings & Loan Ass'n*, 190 Kan. 43, 46, 372 P.2d 67 (1962).

- *Second*, if the written contract is unambiguous and its terms are clear, "the intent of the parties is to be determined from the language of the contract without applying rules of construction." *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888 (2011).

- *Third*, if some part of the written contract is unclear, courts may consider additional evidence—often called parol or extrinsic evidence—of what the parties

9

intended in that agreement. This is because "[p]arties to a contract know best what was meant by its terms, and are the least liable to be mistaken as to its intention." *Berg v. Scully*, 120 Kan. 637, Syl. ¶ 2, 245 P. 119 (1926).

- And finally, the determination whether language is ambiguous is a question of law for the court. *Waste Connections of Kansas, Inc. v. Ritchie Corp.*, 296 Kan. 943, 964, 298 P.3d 250 (2013). But when a court determines that a contract is unclear and must turn to other sources to ascertain its meaning, the ultimate determination of the parties' intent is a question of fact. 296 Kan. at 964-65. Appellate courts do not reweigh the evidence supporting a district court's factual findings, but rather defer to those findings when they are supported by substantial competent evidence in the record. See *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 407, 266 P.3d 516 (2011).

So we turn to the undisputed evidence. During the January 2021 hearing, Rosalind shared an Excel spreadsheet detailing the parties' agreement and provided a copy of that spreadsheet to the court. At the end of the hearing, the court approved and adopted the agreement in the "shared domestic relations affidavit" and the "spreadsheet information that was sent to the Court."

The district court filed its divorce decree a couple of weeks later. The decree included an addendum stating that the parties had "some joint property and joint debts for which they have reached agreements on the issue of distribution, division, and responsibility." The addendum indicated that these agreements were "adopted and incorporated as the judgments, orders, and decree of the Court." Relevant here, the addendum explained that the parties agreed to the following divisions:

"Settlement or judgment proceeds of two lawsuits involving each of these parties, respectively, will be split equally between them and they will be equally responsible for

10

attorney fees arising as a result of those cases. Attorney fees were borrowed as indicated in the DRA and exhibit.

"The parties agreed upon disposition of Respondent's salary back pay . . . which they have executed prior to trial."

Since it adopted and incorporated the parties' agreement, this decree is at once a judgment and a contract, maintaining the character of both types of legal documents. *In re Estate of McLeish*, 49 Kan. App. 2d at 255. Interpreting the decree thus requires us to not only consider what a reasonable person would understand these words to mean, as we would in a noncontractual context, but we also must determine what the parties *intended* these words to mean here. See, e.g., *John Doe v. M.J.*, 315 Kan. 310, 320, 508 P.3d 368 (2022) (explaining that, when interpreting a statute, courts seek to ascertain legislative intent by giving common words their ordinary meanings); *Osterhaus*, 291 Kan. at 768 ("The primary rule for interpreting written contracts is to ascertain the parties' intent.").

Applying these principles here, the parties present competing explanations of what they intended their separation agreement to encompass with the phrases "[s]ettlement or judgment proceeds of two lawsuits" and "salary back pay."

- Rosalind argues that the term "settlement" referred to two personal injury claims she and Joshua were each pursuing for claims arising from a previous car accident. She asserts that the term anticipated division of Joshua's settlement of $102,673.88 that he received in November 2022, just as Joshua received half of her personal injury settlement. She also asserts that "salary back pay" referred to Joshua's workers compensation award of $9,111.14 that was finalized in October 2020.

- Joshua asserts that his "settlement" referenced in the divorce decree referred to the $9,111.14 workers compensation award and could not have applied to his personal

11

injury settlement—as the lawsuit giving rise to that settlement was not filed until months after the divorce decree was entered. He does not explain what the parties intended to cover as "salary back pay."

We find that the divorce decree—and thus the parties' agreement—is unclear, as it does not describe what the parties meant to include when they used these contested terms. The decree is silent as to whether the parties intended the "settlement" provision to encompass ongoing settlement negotiations that months later involved filing a personal injury lawsuit or a workers compensation award that was completed months before the decree was entered. It includes no case numbers and no further description. And the parties offer different explanations for that language. In other words, there is a genuine question as to what settlements the parties intended to include in their agreement. Thus, the district court was presented with a factual question regarding the parties' intent.

The district court resolved this question by considering three evidentiary sources.

First, the court and parties reviewed a recording of the parties' January 2021 hearing on the divorce decree, a transcript of which is included in our record on appeal.

Second, the court reviewed the Excel spreadsheet that the parties discussed in January 2021 and submitted to the court. This spreadsheet is included in the record on appeal, and the parties do not dispute its authenticity:

12

| Debt Obligation: | Payor: | Payee: | Balance Due: | Debt Paid: | Debt Balance: |
|---|---|---|---|---|---|
| Attorney Fee | RM Finch | Marsha & Robert Finch | $3,750.00 | $40.00 | $3,710.00 |
| ~~Living Expenses~~ | ~~RM Finch~~ | ~~Marsha & Robert Finch~~ | ~~$2,100.00~~ | ~~$2,100.00~~ | ~~$0.00~~ |
| ~~Apartment Early Termination Fee~~ | ~~RM Finch~~ | ~~JDF~~ | ~~$860.00~~ | ~~$860.00~~ | ~~$0.00~~ |
| Lawsuit Settlement | RM Finch | JD Finch receives 50% of total amount | $0.00 | $0.00 | $0.00 |
| | | **Total Owed:** | **$6,710.00** | **$3,000.00** | **$3,710.00** |
| Attorney Fee | JD Finch | Marsha & Robert Finch | $3,750.00 | $0.00 | $3,750.00 |
| Living Expenses | JD Finch | Marsha & Robert Finch | $2,100.00 | $0.00 | $2,100.00 |
| Lawsuit Settlement | JD Finch | RM Finch receives 50% of total amount | $0.00 | $0.00 | $0.00 |
| Apartment Deposit | JD Finch | RM Finch receives 50% of total amount | | | $0.00 |
| ~~Salary Back Pay ($9,111.14)~~ | ~~JD Finch~~ | ~~RM Finch receives 50% of total amount~~ | ~~$4,555.57~~ | ~~$4,555.57~~ | ~~$0.00~~ |
| | | **Total Owed:** | **$10,405.57** | **$4,555.57** | **$5,850.00** |

Third, the court heard testimony from the parties regarding their intentions. The record does not include a transcript of that testimony—a deficiency the appellate courts routinely place at the feet of the party challenging the district court's decision (here, Joshua). See *Friedman v. Kansas State Bd. of Healing Arts*, 296 Kan. 636, 644, 294 P.3d 287 (2013).

Based on this evidence, the district court made several findings. It found that the "terminology used by the parties to express their intent at times departed from the legal definition understood by outsiders." It found that the parties intended the term "'lawsuit'" to include "both actual litigation that was pending and the litigation that was a real potential based upon the claim that was contemplated." And it found that the parties labeled Joshua's workers compensation award as "salary back pay." In particular, the court observed the amount of that award was $9,111.14—the exact amount the spreadsheet labeled as "salary back pay."

The district court explained that when the divorce decree was entered, there were three things that could be described as lawsuits—the finished workers compensation claim and the two "unliquidated" personal injury claims. The court found, based on the

evidence, that the parties intended the unspecified "settlements" described in the divorce decree to cover these pending and yet unresolved personal injury claims. The court further noted that Joshua's statements to the contrary were not "wholly true," a credibility finding that is unassailable on appeal. Thus, Joshua has an obligation to divide the settlement from his personal injury action with Rosalind.

These findings are supported by substantial competent evidence in the record. The fact that Joshua's lawsuit was not filed until several months after the divorce decree became final is of no import, given his statement at the hearing that "I'm in the middle of a settlement *right now* that she will obtain half of." (Emphasis added.) He could not have been referring to the workers compensation claim because it was settled finally in October 2020. And as the district court noted, the amount of that claim is the exact amount—to the penny—labeled on the January 2021 spreadsheet as "salary back pay." It is entirely plausible and consistent with Joshua's statements that there were settlement negotiations going on at the time that the divorce decree was entered, though a lawsuit was not filed until later.

The interpretation of written contracts is not for the faint of heart. As this case illustrates, parties to a contract often use language that is meaningful to themselves but is less understandable to someone outside the agreement. This is particularly true when those people are not represented by attorneys yet are navigating waters full of legal jargon. But as the district court noted here, these difficulties do not mean that ascertaining that intent is impossible. And they do not mean that people using imprecise language should not be held to their agreements.

In sum, we conclude that the divorce decree in this case is ambiguous because it is silent as to what is contemplated by "settlement," "lawsuit," and "salary back pay." The district court's factual findings resolving this ambiguity are supported by substantial competent evidence in the record. Thus, we affirm the district court's judgment.

III.    ROSALIND IS NOT ENTITLED TO APPELLATE ATTORNEY FEES

Finally, Rosalind moved for appellate attorney fees under Supreme Court Rule 7.07, attaching the required affidavit of her appellate counsel and an itemization of fees under Supreme Court Rule 7.07(b)(2) (2025 Kan. S. Ct. R. at 52). In short, she seeks appellate attorney fees through Rules 7.07(b) and (c), arguing Joshua's appeal is frivolous and taken for harassment or delaying satisfaction of judgment. Joshua disagrees, asserting his appeal is not frivolous because it presents a justiciable issue and that the district court did not award any attorney fees below.

Kansas courts have authority to award attorney fees on appeal under K.S.A. 23-2715, which permits courts to award fees in divorce proceedings "to either party as justice and equity require." See *Snider v. American Family Mut. Ins. Co.*, 297 Kan. 157, 162, 298 P.3d 1120 (2013) (whether a court has authority to award attorney fees is a question of law subject to unlimited review). Rosalind alleges justice and equity require awarding attorney fees because Joshua is attempting to avoid his obligations under the parties' separation agreement, which was entered after an amicable divorce hearing, while she has already fully complied. But as discussed, because we find that the divorce decree and settlement agreement were ambiguous, Joshua had a valid basis to object to Rosalind's motion to enforce the judgment. His motives are irrelevant.

Rosalind also contends Joshua's appeal is frivolous and taken only for harassment or delay under Supreme Court Rule 7.07(c) (2025 Kan. S. Ct. R. at 52). She points out that Joshua sought the maximum time extensions for filing a brief, only to then file a *de minimis* brief of only four pages. But parties on appeal are entitled to seek extensions of the briefing deadlines under Supreme Court Rule 5.02 (2025 Kan. S. Ct. R. at 32), a rule which also benefited Rosalind since she received an extension as well.

Rosalind also asserts that Joshua's appeal presents no justiciable issue and is readily devoid of merit. Joshua's arguments about improper modification are not frivolous simply because they failed. At a minimum, Joshua believed the district court improperly interpreted the separation agreement, which is a justiciable issue. Briefly, Rosalind also points to Joshua failing to contest the garnishment proceedings as evidence of frivolity. As explained when discussing acquiescence, while Rosalind has initiated garnishment proceedings on the judgment, the information in our record suggests that she has not successfully garnished any of Joshua's funds to satisfy the judgment.

For these reasons, we deny Rosalind's request for appellate attorney fees.

The judgment of the district court is affirmed. Rosalind's request for attorney fees is denied.

Affirmed.